United States Court of Appeals,

Fifth Circuit.

No. 96-20401.

Rosa BECERRA, Individually and as next friend of Juan Doe, A Minor, Plaintiff-Appellant,

v.

Jerry ASHER, et al., Defendants,

Houston Independent School District, Joan Raymond, Sylvia Macy and Barbara Turner, Defendants-Appellees.

Feb. 14, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, and REAVLEY and DENNIS, Circuit Judges.

REAVLEY, Circuit Judge:

Defendant Jerry Asher, a music teacher with the Houston Independent School District (HISD), sexually molested Juan Doe, an eleven-year old boy. Juan's mother, Rosa Becerra, individually and as next friend of Juan, brought this action against Asher, three HISD administrators, and HISD, alleging a federal claim under 42 U.S.C. § 1983 and state law claims. The court granted summary judgment in favor of all the defendants except Asher on the § 1983 claim, and entered a final judgment in favor of these defendants under FED.R.CIV.P. 54(b).[1] Because we agree with the district court that the sexual assault by Asher was not state action, we affirm.

BACKGROUND

Asher was a teacher with HISD from 1975 to 1992. In 1987 he was charged with indecency with a child arising from an incident at Frost Elementary. Then HISD superintendent, defendant Joan Raymond, suspended Asher because of the charge, but he resumed teaching after his acquittal. After the acquittal Asher was transferred to Patterson Elementary. While at Patterson, the principal, defendant Barbara Turner, heard that Asher planned to give private music lessons in his classroom, that he had questioned students about personal matters, and that he had asked a student to roll up his

---

[1]The state law claims were dismissed without prejudice under 28 U.S.C. § 1367, which allows the court to decline to exercise supplemental jurisdiction after the sole federal claim is dismissed.

pants so that Asher could examine his leg for signs of physical abuse. Turner told Asher not to engage is such activities. Asher also disrupted a faculty meeting and tried to initiate a group prayer to quell rumors about the prior indecency charge. Turner reprimanded Asher for this behavior and recommended that he receive a medical evaluation, but this recommendation went unheeded. Turner wanted Asher transferred to another school. Becerra complains that Turner gave Asher an excellent teacher evaluation to facilitate his transfer.

In July 1990, Defendant Sylvia Macy, an area superintendent, authorized Asher's transfer to Harris Elementary. Juan Doe attended Harris Elementary from 1990 to 1992. He was a student in Asher's music class. On March 9, 1992, Juan withdrew from Harris Elementary, but Juan and his brother continued a friendship with Asher. With their mother's permission, the boys spent time with Asher. Their activities included home music lessons, trips to the zoo and theme parks, and church activities. On August 29 and September 12, 1992, Asher was alone with Juan and his brother at their home, and sexually molested Juan. Juan's grandmother witnessed the latter incident. Becerra reported Asher to the authorities. He resigned from HISD in December of 1992, pleaded guilty to child molestation, and was sentenced to 50 years in prison.

Becerra sued under § 1983, alleging a violation of Juan's substantive due process right to bodily integrity, and a violation of his right to equal protection because of an HISD policy of transferring troubled teachers to largely minority schools. The equal protection claim was abandoned on appeal. Becerra complained, *inter alia,* that for years before the assaults on Juan, Asher was a known threat to his students and had committed numerous sexual acts with minor students. She complained that the sexual abuse of Juan occurred as a result of the conduct and deliberate indifference of HISD and its officials, that HISD failed to train and supervise its employees to prevent sexual misconduct, and that defendants adopted a policy of transferring Asher and other pedophiles from one school to another, rather than terminating them. The district court, after allowing limited discovery on the issue of qualified immunity, granted summary judgment in favor of the appellees.

DISCUSSION

*Doe v. Taylor Indep. Sch. Dist.*[2] is our circuit's seminal case on the subject of § 1983 liability for sexual misconduct in the school setting. This decision made three important holdings. We held that "schoolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right."[3] We further held, for purposes of analyzing the qualified immunity defense, that this right was clearly established.[4] In addressing vicarious liability, we recognized that local governments and supervisory personnel are not subject to § 1983 liability under a vicarious liability or respondeat superior theory.[5] However, we held that these defendants could be held liable, under a "deliberate indifference" standard, if they demonstrated deliberate indifference toward the constitutional rights of the student.[6]

A. *State Action*

Although the law is clear that physical sexual abuse of a student by a school teacher can give rise to § 1983 liability, a separate and essential element of such a claim is that the abuse occur under color of state law. "To state a claim under § 1983, the plaintiff ... must show that the alleged deprivation was committed by a person acting under color of state law."[7] When, as here, the alleged constitutional violation is a violation of the Due Process Clause of the Fourteenth Amendment, this requirement flows both from the "state action" component of the Fourteenth Amendment and the "under color of" state law requirement of § 1983.[8] The "state action" and "under color of state law"

---

[2]15 F.3d 443 (5th Cir.) (en banc), *cert. denied,* --- U.S. ----, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994).

[3]*Id.* at 445.

[4]*Id.* at 454-56.

[5]*Id.* at 452.

[6]*Id.* at 453-54.

[7]*West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254-55, 101 L.Ed.2d 40 (1988).

[8]*Doe v. Rains County Indep. Sch. Dist.,* 66 F.3d 1402, 1406 (5th Cir.1995).

requirements are identical in this context.[9]

As egregious and cruel as Asher's acts were, liability under § 1983 is necessarily limited to constitutional violations occurring under color of state law. "Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."[10] The Supreme Court has rejected an approach that would make "the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States."[11]

*Doe v. Taylor* addressed this issue. That case involved the sexual abuse of a student by a teacher, Stroud, who was a coach and biology teacher. It was no secret in the school community that Stroud behaved inappropriately towards female students.[12] The principal was aware of this behavior.[13] The teacher befriended the plaintiff, a high school freshman, and the two began exchanging notes at school. He gave her gifts, took her to lunch during the school day and walked her to class. In his biology class plaintiff was not required to take tests or do class work.[14] The two engaged in sex "both on and off the school grounds."[15]

The majority opinion in *Doe v. Taylor* discusses the state action requirement in footnote 4:

Lankford and Caplinger argue first that Stroud's actions were not taken under color of state law. They rely on *D.T. by M.T. v. Independent School District No. 16,* 894 F.2d 1176 (10th Cir.)[, *cert. denied,* 498 U.S. 879, 111 S.Ct. 213, 112 L.Ed.2d 172 (1990) ], in which a teacher molested three students during the summer while engaged in a fundraising campaign for a basketball camp. The school made it clear to the teacher that the fundraising activity was not a school program but rather was organized as a community volunteer effort. In this case, however, Stroud took full advantage of his position as Doe's teacher and coach to seduce her. He required Doe to do little or no work in the classroom and still gave her A's. He also spoke to one of Doe's other teachers about raising her grade in that class. Stroud was

---

[9]*Id.*

[10]*Daniels v. Williams,* 474 U.S. 327, 332, 106 S.Ct. 662, 665-66, 88 L.Ed.2d 662 (1986).

[11]*Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160-61, 47 L.Ed.2d 405 (1976).

[12]*Doe v. Taylor,* 15 F.3d at 446.

[13]*Id.*

[14]*Id.* at 447.

[15]*Id.* at 448.

also Doe's basketball coach and he exploited that position as well. The first physical contact Stroud had with Doe was after a basketball game in November 1986 when he grabbed her and kissed her. Stroud's physical contact with Doe escalated thereafter. During the next several months Stroud took Doe from his classroom to an adjoining lab room where he kissed and petted her. During that same period of time Stroud also met Doe in the school's fieldhouse where similar activity took place. As the court in *D.T.* recognized, if a "real nexus" exists between the activity out of which the violation occurs and the teacher's duties and obligations as a teacher, then the teacher's conduct is taken under color of state law. *Id.* at 1188. As demonstrated by the above facts, the nexus that was missing in *D.T.* was clearly present in this case. We therefore reject the school officials' argument that Stroud's acts were not under color of state law.[16]

Judge Higginbotham, in his concurring opinion, agreed that state action existed for the following reasons:

The next inquiry is whether the deprivation of liberty occurred under color of state law. I agree that it did. Stroud's official interactions with Doe and his sexual involvement with her together constituted an indivisible, ongoing relationship. The special attention Stroud gave Doe as her teacher afforded him the opportunity to exert his influence. He levered his authority to press upon Doe his sexual desires, while both on and off school grounds. He treated Doe differently than he treated other members of his class. He gave her good grades, required of her less work than other students, and allowed her to behave as she liked in his classroom. This manipulative course was an abuse of power conferred by the state. I am persuaded that Stroud acted under color of state law. Judge Garwood's dissent commendably recognizes the relevance of this inquiry but contests this conclusion, relying on [*D.T.*], where a school coach was held not to have acted under color of state law when engaging in sexual activity with students. Unlike the defendant in *D.T.,* however, Stroud was Doe's teacher before, during, and after their sexual liaison. *See id.* at 1191 (emphasizing that teacher was on vacation when molestation occurred in reaching conclusion that he did not act under color of state law).[17]

Significantly, both the majority opinion and the concurring opinion quoted above have no quarrel with the reasoning of the Tenth Circuit in *D.T.,* but find the case distinguishable. Judge Garwood's dissent also cites *D.T.* with approval.[18]

In *D.T.,* a teacher allegedly molested three students during the summer while engaged in a fundraising trip for a basketball camp that was not sponsored by the school. Although flyers had been circulated on school grounds regarding the camp, and a basketball game had been played on school grounds to raise money for the camp,[19] the court held that the sexual misconduct had not occurred

[16]*Id.* at 452 n. 4.

[17]*Id.* at 461-62 (Higginbotham, J., specially concurring) (citations omitted).

[18]*Id.* at 466-67 & n. 4 (Garwood, J., dissenting).

[19]*D.T.,* 894 F.2d at 1183.

under color of state law.

We conclude that Asher's sexual assaults on Juan Doe did not occur under color of state law. Our case is much closer to *D.T.* than *Doe v. Taylor*. The evidence of Asher's assaults in the summary judgment record includes the testimony of Juan, his mother, and Asher at Asher's sentencing hearing in state court. We have carefully reviewed this evidence. The testimony indicates that the physical sexual abuse of Juan by Asher occurred on two occasions, August 29 and September 12, 1992. Asher, for example, testified that he was "friendly, pleasant, and gift-giving" toward Juan "until the end when I fell." He then answered questions from the prosecutor "about the first sexual act on August the 29th."[20]

The assaults occurred at Juan's home. Asher first molested Juan more than five months after Juan withdrew from the school where Asher taught. Asher's contacts with Juan thereafter were in no way part of his duties as a state employee, were not school-sponsored, and were not reported to any school official. While there was evidence that Asher had first befriended and shown a special

---

[20]Becerra moved for a new trial after the court granted summary judgment, attaching affidavits of Juan and Juan's psychiatrist. Becerra does not specifically complain on appeal that the court erred in denying the motion for new trial, but does discuss statements made in the two affidavits, and complains that the district court erred in disregarding the psychiatrist's affidavit. We review the district court's denial of a motion for new trial under the abuse of discretion standard. *Bailey v. Daniel,* 967 F.2d 178, 179-80 (5th Cir.1992). When a party offers alleged newly-discovered evidence, the district court should consider whether the omitted evidence was available to the moving party prior to the time for filing his response to the summary judgment motion. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 174-75 (5th Cir.1990), *cert. denied,* 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993). The two affidavits were first filed on February 13, 1996, the same day the court signed its order granting the summary judgment. Although the expert opined that "[i]t is typical that a victim who has undergone such sexual trauma as Juan has would try to suppress details as much as possible," Juan testified in detail regarding his sexual abuse at Asher's state court trial in 1993, and his own affidavit states that "I wish I could forget, but I can't." The affidavits contained information peculiarly within the control of the plaintiff. As early as April of 1995, plaintiff alleged in her second amended complaint that Asher had fondled Juan in a classroom, and alleged in her August 1995 third amended complaint egregious sexual abuse "both in class and off-campus." Further, we agree with the district court that Juan's affidavit only made "vague references to unspecified touching of Juan in class by Asher." For example it stated that Asher "first started touching my body lightly while in class." Similarly, the expert stated, based on revelations made by Juan, that Juan "felt that Mr. Asher had crossed the line and violated his preferred physical distance and was invading his "personal space.' " This evidence, even if deemed timely, does not establish that physical sexual abuse occurred at school, during the period when Asher was Juan's teacher. Given the timing and substance of the new evidence, we cannot say that the court abused its discretion in denying the motion for new trial.

interest in Juan at school, there was no competent summary judgment evidence of physical sexual abuse at the school. Unlike in *Doe,* Asher was not Juan's teacher "before, during, and after" the sexual abuse, nor was this wrongful conduct "on and off school grounds." On this evidence we hold that there was no " "real nexus' ... between the activity out of which the violation occurs and the teacher's duties and obligations as a teacher," as *Doe* requires.[21]

Plaintiff offered expert affidavits to the effect that the seduction of Juan began at school, and the later sexual abuse would not have occurred if Asher had not first won Juan's trust and affection while serving as his teacher. However, in *Doe v. Taylor,* our court, cognizant that the Due Process Clause should not be interpreted as a "font of tort law to be superimposed upon whatever systems may already be administered by the States,"[22] was very clear in its holding that the constitutional violation did not extend to the development of trust and affection.[23]

Because Asher's physical sexual abuse of Juan did not occur under color of state law, there was no state action and no violation of Juan's constitutional rights. It necessarily follows that, without an underlying *constitutional* violation, there can be no § 1983 liability imposed on the school district or the individual supervisors. *Doe v. Taylor* requires, as a separate element of supervisor liability, that the supervisor's deliberate indifference "caused a *constitutional* injury to the student."[24] In addressing municipal liability, the Supreme Court has stated that "proper analysis requires us to separate two different issues when a § 1983 claim is asserted ... (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation."[25] Without an underlying constitutional violation, an essential element of municipal liability is missing. As our court has explained, "[a]fter finding that (1) a rights violation occurred (2) under color of state

---

[21]*Doe v. Taylor,* 15 F.3d at 452 n. 4.

[22]*Paul,* 424 U.S. 693 at 701, 96 S.Ct. 1155 at 1160-61, 47 L.Ed.2d 405.

[23]*Doe v. Taylor,* 15 F.3d at 445, 450, 451, 454.

[24]*Id.* at 454 (emphasis added).

[25]*Collins v. City of Harker Heights,* 503 U.S. 115, 120, 112 S.Ct. 1061, 1065-66, 117 L.Ed.2d 261 (1992).

law, only then do we ask a third and final question: Who are the state actors responsible for the constitutional violation?"[26]

B. *Other Issues*

Becerra complains that the district court abused its discretion in limiting discovery prior to granting summary judgment. She argued to the district court that defendants' summary judgment motions should not be considered before the deposition of defendant Raymond and other school officials, but there is no indication in the record that these witnesses had personal information about Asher's sexual abuse of Juan not otherwise available to Juan or his mother. A party seeking continuance of a motion for summary judgment in order to obtain further discovery must show "why he needs additional discovery and *how* the additional discovery will create a genuine issue of material fact."[27] Becerra does not meet this burden.

Becerra also complains that the court erred in not considering Asher's deemed admissions as evidence against the other defendants. When the requests for admissions were propounded upon Asher, he was in prison, representing himself. He failed to answer the requests for admissions. The requests asked Asher to admit or deny that he had engaged in various acts of sexual misconduct "while a teacher at" several schools, and that he had sexual contact with Juan "while he was a teacher at HISD," "while a teacher at HISD," or between 1987 and December 1992. There was no error in disregarding these admissions. Deemed admissions by a party opponent cannot be used against a co-party.[28] Further, the requests for admissions only asked about sexual contacts by Asher "while a teacher at HISD." Hence they do not shed light on the critical inquiry of whether the contacts with Juan occurred at school or elsewhere, or whether they occurred at the time Asher was Juan's teacher or in the course of school-sponsored activities.

AFFIRMED.

---

[26]*Doe v. Rains,* 66 F.3d at 1402.

[27]*Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1442 (5th Cir.1993) (emphasis in original).

[28]*Riberglass, Inc. v. Techni-Glass Indus., Inc.,* 811 F.2d 565, 566 (11th Cir.1987); 8A CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE § 2264 at 571-72 & 580 (1994).