| iPETERS, Judge.
The plaintiffs, Ronald D. Wagoner and Carolyn Rae Wagoner, appeal the trial court’s granting of motions for summary judgment in favor of two defendants, the Vermilion Parish Police Jury and Vermilion Parish Sheriff Raywood J. LeMaire. The sole issue before us is whether the trial court erred in.granting those motions for summary judgment and dismissing the plaintiffs’ claims under 42 U.S.C. § 1983.
DISCUSSION OF THE RECORD
Ronald D. Wagoner and his wife, Carolyn Rae Wagoner, filed suit individually and as administrators of the estates of their minor sons to recover damages in connection with the alleged sexual molestation of their children by Walter Dyson, who had been commissioned as a special deputy by the sheriff of Vermilion Parish. The Wagoners named several defendants, including the Vermilion Parish Police Jury and ^Raywood LeMaire, the Sheriff of Vermilion Parish. This litigation was previously before this court in connection with the trial court’s granting of an exception of no cause of action, an exception of prescription, and a motion for summary judgment in favor of Sheriff LeMaire. See Wagoner v. Dyson, 94-728 (La.12/7/94); 647 So.2d 493, writ not considered, 95-0129 (La.3/10/95); 650 So.2d 1171. In that appeal, we affirmed the judgment granting Sheriff LeMaire’s motion for summary judgment on the issues of vicarious liability and independent negligence, reversed the judgment granting the exception of prescription, and found it unnecessary to consider the judgment granting the exception of no cause of action. See id. We remanded for further proceedings on the claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1988. See id. The § 1983 claim is now before us on appeal from the trial court’s granting of Sheriff LeMaire’s and the Vermilion Parish Police Jury’s motions for summary judgment.
The Wagoners alleged that their two minor sons were sexually molested by Dyson while with him on a camping trip at a hunting camp in Vermilion Parish. They also alleged that for many months prior to the sexual molestation, Dyson specifically used his status as a special deputy sheriff, identification card, and badge to gain their trust and confidence in order to deceive, trick, manipulate, seduce, and coerce them into his tortious scheme to molest the children. The acts of sexual molestation allegedly occurred between July 1,1991 and July 4,1991.
The undisputed facts show that both before and during July, 1991, Dyson maintained and ran a hunting club for a private individual at Pecan Island, Vermilion Parish, Louisiana. Dyson would go to the camp to inspect the facilities about three times a year. Dyson asked for a special deputy’s commission so that he could carry a weapon because at times he was required to carry large sums of money and because |3at times there were poachers on the property. He was given a special deputy’s commission and a plastic identification card. However, the sheriff told Dyson that he had no authority as a law enforcement official in Vermilion Parish. Although Dyson did have a badge, handcuffs, and radio, he purchased these with his own money, and they were his personal property. He was never given a uniform, any equipment, or a payroll check by the Vermilion Parish Sheriff’s Department.
The Wagoners and Dyson became neighbors in May of 1991, when the Wagoners rented a house next door to Dyson. Sometime in June of 1991, Dyson asked if he could take the boys with him to check on the camp. Dyson told the Wagoners that he wanted to take the boys to the camp to show them how to shoot a gun and fish and “just the aspects of marsh life.” The Wagoners allowed the children to go. Dyson did not go to the camp on business for the sheriff or for Vermilion Parish but for inspection and maintenance purposes. It was on this trip that Dyson allegedly sexually molested the boys.
OPINION
A motion for summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). Summary judgment procedure is favored and *348 must be construed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by La.Code Civ.P. art. 969. La.Code Civ.P. art. 966(A)(2).
42 U.S.C. § 1983 provides in part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the | jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person who acted under color of state law. West v. Atkins, 487 U.S. 42, 108 S.Ct. 2260, 101 L.Ed.2d 40 (1988). “Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken ‘under color of state law.” United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). “[A]ets of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it.” Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945).
In Becerra v. Asher, 105 F.3d 1042 (5th Cir.1997), cert. denied, — U.S. -, 118 S.Ct. 82, 139 L.Ed.2d 40 (1997), a case presenting a closer issue than the one at hand, a teacher sexually molested a former student. The molestation first took place over five months after the student had withdrawn from school and occurred when the teacher spent time with the student with the permission of the student’s mother. The Fifth Circuit concluded that the teacher’s sexual assaults on the student did not occur under color of state law, noting that the teacher’s contacts with the student after the student had withdrawn from school were in no way part of his duties as a state employee, were not school-sponsored, and were not reported to any school official. The court explained that while there was evidence that the teacher had first befriended and shown a special interest in the student at school, there was no competent summary judgment evidence Rof physical sexual abuse at the school. The court held that there was no real nexus between the activity out of which the violation occurred and the teacher’s duties and obligations as a teacher.
We held in our prior opinion that Dyson was not an employee with the Vermilion Parish Sheriffs Office. See Wagoner, 647 So.2d 493. Rather, his only connection to the Vermilion Parish Sheriffs Office was his commission as a special deputy sheriff and the issuance of an identification card to that effect that authorized him to carry a concealed weapon. See id. Thus, his connection with the sheriffs department was not in the nature of duties and obligations but in the nature of a privilege. Even assuming he had duties and obligations, not even the initial contact between Dyson and the Wagoners arose out of his position or duties as a special deputy, and the activity out of which the abuse occurred was not connected to any duties Dyson may have had as a special deputy. Dyson testified in deposition that the reason he was there in July of 1991 was for inspection and maintenance. The Wagoners testified in deposition to the effect that Dyson told them the camp was his and another individual’s, and both Mr. and Mrs. Wagoner acknowledged that the Vermilion Parish Sheriffs Department did not own the camp. Both Mr. and Mrs. Wagoner testified that Dyson told them he had to go check on the camp, and they were both aware that Dyson was not going to perform any functions as a Vermilion Parish Sheriffs Deputy. Clearly, the camp outing and molestation were in the ambit of Dyson’s personal pursuits, and his privilege of carrying a gun did not render his pursuits official business. Under these undisputed facts, we find that as a matter of law there was no real nexus between the camping activity and Dyson’s duties and obligations, if any, as a special *349 deputy. Therefore, as a matter of law, the abuse was not action under color of state law.
| (¡However, it is the Wagoners’ position that Dyson acted under the color of law by using his status as a deputy sheriff to gain their trust and confidence. We note that Mrs. Wagoner’s deposition testimony indicates that the decision to allow the children to go camping was not based entirely on Dyson’s status as a special deputy. Specifically, Mrs. Wagoner testified, among other things, that they let the children go after her husband talked to some people at his work and the people said that Dyson seemed to be a respectable man; she also testified that they did not check with the sheriffs department. In any event, in Becerra, 105 F.3d 1042, while the Fifth Circuit noted that school children have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right, the court also explained that the constitutional violation does not extend to the development of trust and affection. The appropriateness of the application of that principle to the case at hand is obvious. Therefore, we find that Dyson’s mere use of his status as a special deputy to gain the Wagoners’ trust and confidence was not a constitutional violation.
Additionally, as in Becerra, because Dyson’s physical sexual abuse of the children did not occur under color of state law, as we have discussed above, there was no state action and no violation of the children’s constitutional rights in that regard. It therefore follows that without an underlying constitutional violation, there can be no § 1983 liability imposed on either Sheriff LeMaire or the Vermilion Parish Police Jury. See Becerra, 105 F.3d 1042. In Becerra, the court explained that only after finding a rights violation occurred under color of state law does it try to determine who the responsible state actors are. Therefore, since we hold as a matter of law that the abuse did not occur under color of state law, we need not consider the Wagoners’ argument that Sheriff Le-Maire and the Vermilion Parish Police Jury are hable because the ^customs, policies, and practices of LeMaire and his predecessor in “haphazardly” commissioning these special deputies and allowing Dyson to “run around posing as a true deputy and abusing his authority,” without any training or supervision, were the “moving force” behind the abuse suffered by the boys.
DISPOSITION
• For the foregoing reasons, we affirm the summary judgment in favor of Sheriff Le-Maire and the Vermilion Parish Police Jury. We assess costs of this appeal to the plaintiffs.
AFFIRMED.