## Ortiz v. Cruz

518

*Marc F. Greenfield,* for plaintiffs.
*Thomas J. Bradley,* for defendants.

McINERNEY, *J.,* August 7, 2009—Plaintiffs Bezaida Ortiz and Jose Rivera appeal from this court's order entering summary judgment in favor of defendant A Plus Family Movers Inc. On or about July 14, 2006, plaintiffs sustained injuries when a truck owned by A Plus but operated by defendant Efrain Cruz collided with the vehicle in which plaintiffs were traveling. Plaintiffs brought suit alleging that A Plus was negligent in, inter alia, permitting an incompetent driver to operate its truck. Having presented evidence that Mr. Cruz was not an A Plus employee and, in fact, had stolen the truck, A Plus moved for summary judgment. Plaintiffs responded arguing "a question of fact can be raised as to whether Mr. Cruz actually stole [A Plus'] vehicle." (Pls.' resp. ¶16.) Because plaintiffs failed to produce any evidence that Mr. Cruz had not stolen the truck and no genuine issue of material fact existed thereupon, this court properly entered summary judgment in favor of A Plus.

## I. BACKGROUND

This action arises out of a motor vehicle accident that occurred on or about July 14, 2006 in Philadelphia, PA. Plaintiffs, Bezaida Ortiz and Jose Rivera, claim to have sustained injuries when a truck owned by A Plus but operated by Mr. Cruz collided with the motor vehicle in which they were traveling.[1]

---

1. This vehicle was owned by Mr. Rivera but operated by Ms. Ortiz.

On August 17, 2007, plaintiffs commenced this action by way of a complaint against Mr. Cruz and A Plus. In their complaint, plaintiffs averred that Mr. Cruz, at all material times, "was acting individually and/or as a lessee, agent, servant, workman and/or employee of defendant, A Plus Family Movers, *with* defendant, A Plus Family Movers[] Inc.'s express, apparent and/or implied permission, authorization and/or consent." (Compl. ¶3 (emphasis added).) Plaintiffs asserted that A Plus was negligent in, inter alia, "[p]ermitting an incompetent driver to operate the vehicle" and "[a]llowing [Mr. Cruz] to operate [A Plus'] motor vehicle while intoxicated[.]" (Compl. ¶18(a), (d).) A Plus denied the above averments in its answer to plaintiffs' complaint. (Def.'s answer ¶¶3, 18(a), (d).)

On November 20, 2008, after the pleadings were closed, A Plus moved for summary judgment. In its motion, A Plus averred entry of summary judgment was warranted in this case because plaintiffs cannot prove that Mr. Cruz was an A Plus employee or acting within the course and scope of such employment. (See def.'s mot. ¶¶18-22.) Rather, according to A Plus, Mr. Cruz (1) was the employee of a subcontractor to whom A Plus occasionally subcontracted moving jobs and (2) had in fact stolen the A Plus truck involved in the collision from A Plus' property. (See def.'s mot. ¶¶13, 16.) In support of its position, A Plus provided the deposition testimony of A Plus' vice president, Pamela Locke, whose duties involved general oversight of the office, office staff and daily activities. (Def's mot., exhibit C, deposition of Pamela Locke, p. 6.) According to Ms. Locke, Mr. Cruz was not an employee of A Plus and did not have permis-

sion to drive any A Plus truck. (Def's exhibit C, pp. 6-9.) Rather, Mr. Cruz was the employee of a subcontractor, Christopher Amusco, to whom A Plus would occasionally subcontract a moving job, and was hired by Mr. Amusco as a laborer. (Def.'s exhibit C, pp. 11, 19-20.) Ms. Locke testified that she normally did not have contact with the laborers hired by the three subcontractors they had at the time, and that she does not remember that she ever actually saw Mr. Cruz. (See def.'s exhibit C, pp. 20-21.) According to Ms. Locke, on the day in question Mr. Cruz reportedly fell ill while out on a moving job subcontracted to Mr. Amusco. (See def.'s exhibit C, p. 9.) As such, the customer kindly brought Mr. Cruz back to A Plus' warehouse. (Def.'s exhibit C, p. 9.) After having been brought back to the warehouse, Mr. Cruz proceeded to steal an A Plus truck out of the warehouse and then involve it in the accident in question. (Def.'s exhibit C, p. 9.) The truck that he stole was being worked on by an A Plus mechanic who left for lunch, leaving the truck unattended in the unlocked warehouse with the keys inside. (Def.'s exhibit C, pp. 9-10, 13.) It was this truck that was involved in the collision in question, not the one that was out on the moving job subcontracted to Mr. Amusco.[2] (Def.'s exhibit C, p. 9.) According to Ms. Locke, no A Plus employee was even aware that Mr. Cruz had stolen the truck until the police called to say the truck had been

---

2. Ms. Locke explained that part of the subcontracting arrangement was that the subcontractor would get the use of a designated A Plus truck for the moving job. (Def.'s exhibit C, pp. 22-23.)

involved in a motor vehicle accident. (Def.'s exhibit C, pp. 9, 24-25.)

On December 19, 2008, plaintiffs responded to A Plus' motion for summary judgment. In their response, plaintiffs admitted that Mr. Cruz was the employee of subcontractor Christopher Amusco. (Pls.' resp. ¶13.) However, plaintiffs argued summary judgment was not appropriate because "a question of fact can be raised as to whether Mr. Cruz actually stole defendant's vehicle." (*Id.* ¶16.) First, plaintiffs argued "[s]ince neither defendant ever responded to [plaintiffs'] request for admissions . . . it is now admitted that [Mr. Cruz] had permission from [A Plus] to operate their vehicle when he had the accident . . . ." (*Id.* ¶¶6-10.) Next, plaintiffs provided a copy of the police report from the incident which they (erroneously) contended showed Mr. Cruz did not flee the scene, but rather provided the officer with the vehicle's registration card, etc. (*Id.* ¶16; exhibit B.) Plaintiffs argued these actions of Mr. Cruz as established by the police report called "into question . . . whether the vehicle he was driving had been 'stolen' . . . ." (*Id.* ¶16.) Citing deposition testimony of Ms. Locke, plaintiffs also suggested that the fact that a number of A Plus policies would have had to have been violated (*e.g.,* leaving keys in an unattended truck) to allow the truck to have been stolen called into question whether it had in fact been stolen. (See *id.* ¶16.) Finally, and somewhat relatedly, plaintiffs also argued A Plus could be liable in this case in that its "actions were in contradiction of company policy so as to make it possible for Mr. Cruz to gain access to one of their trucks and cause this collision." (*Id.* ¶20.)

A Plus filed a reply brief on December 30, 2008. In its reply brief, A Plus first highlighted that "[p]laintiffs have admitted that Mr. Cruz was the employee of an independent contractor[,]" which it argued alone warranted summary judgment. (Pls.' reply p. 2.) A Plus next addressed plaintiffs' claim that there was "an issue of fact as to whether or not Mr. Cruz stole the truck as opposed to having the permission of A Plus to operate it." *(Id.)* Addressing the requests for admissions, A Plus first noted that it had "no record of ever receiving these requests for admissions." *(Id.* at 3.) A Plus, however, also argued that assuming arguendo it had received these requests they did not establish what plaintiffs suggested, stating:

"A review of the requests for admission . . . indicates that the only request in any way arguably relevant to this issue is request no. 4 that states . . . 'answering defendant had the permission of the owner of vehicle he/she was operating at the time of the accident . . . .' Since A Plus was the owner of the vehicle and not the operator of the vehicle, this request would obviously be inapplicable to it and would not establish anything." *(Id.)*

As for the request plaintiffs claimed to have served upon Mr. Cruz, A Plus first noted that there is no record of service on Mr. Cruz.[3] *(Id.)* Further, A Plus argued even

---

3. What the record does show is that service of original process (which plaintiffs assert was accompanied by the request for admissions) was not personal. Rather, plaintiffs filed a motion for alternative service, which was granted by the court. Nothing in the record suggests Mr. Cruz participated in this case or was ever physically located following the accident.

if it had, Mr. Cruz' admission would not be binding upon A Plus. *(Id.)* Next, A Plus correctly pointed out that the police report upon which plaintiffs relied did not show what plaintiffs claimed. *(Id.* at 4.) A Plus argued "[t]he suggestion by [p]laintiffs that Mr. Cruz did not flee the scene and behaved as a normal driver when confronted by the police is contradicted by the very police report that [p]laintiffs . . . attached . . . ." *(Id.)* A Plus noted that the police report (1) showed Mr. Cruz *had* fled the scene and was later stopped and identified and (2) gave no indication who supplied the police with the pertinent vehicle information, etc. *(Id.)*

Finally, A Plus addressed what it viewed as plaintiffs for the first time suggesting "another possible theory of liability against [A Plus]"—*i.e.,* that it could be liable for violations of company policy *(e.g.,* leaving keys in an unattended truck) that allowed Mr. Cruz to gain access to the truck. *(Id.)* Citing inter alia *Roche v. Ugly Duckling Car Sales Inc.,* 879 A.2d 785 (Pa. Super. 2005), A Plus argued Mr. Cruz' careless operation of the truck was the superseding cause of plaintiffs' injuries and A Plus' negligence, if any, was too remote to support a cause of action against it. (See *id.* 6-7.)

By order dated January 15, 2009 and docketed January 22, 2009, this court entered summary judgment in favor of A Plus and dismissed plaintiffs' complaint as to A Plus. On April 17, 2009, plaintiffs took a default judgment against Mr. Cruz. After damages were assessed against Mr. Cruz, plaintiffs filed this timely notice of appeal and this court ordered plaintiffs to file a Pa.R.A.P. 1925(b) statement. In their 1925(b) statement, plaintiffs com-

plained this court erred in granting A Plus summary judgment because:

(1) "the question of whether defendant, A Plus Family Movers Inc., was negligent should be made by the fact-finder[;]"

(2) "the question of whether defendant, A Plus Family Movers Inc., was negligent was not the clearest of cases where reasonable minds could agree[;]"

(3) "when viewing the evidence in a light most favorable to plaintiffs as the non-moving party, defendant, A Plus Family Movers Inc., may be determined by reasonable minded individuals to be negligent in their actions by allowing co-defendant to appear on their property and drive one of their vehicles[;]"

(4) "based upon existing case law and the facts of this case, summary judgment is not appropriate." (Pls.' 1925(b) statement ¶9.)

## II. DISCUSSION

Pennsylvania Rule of Civil Procedure 1035.2 provides that after the pleadings are closed, a party may move for summary judgment in the following two circumstances:

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports,

an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2.

Where the non-moving party bears the burden of proof on an issue, they cannot merely rely on their pleadings or answers in order to survive summary judgment because "[f]ailure of a non-moving party to adduce sufficient evidence on an issue essential to [their] case and on which [they] bear[] the burden of proof . . . establishes the entitlement of the moving party to judgment as a matter of law." *Murphy v. Duquesne University*, 565 Pa. 571, 590, 777 A.2d 418, 429 (2001). (quotations omitted) Rule 1035.3(a) requires the non-moving party to respond to the motion by identifying either: "(1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or (2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced." Pa.R.C.P. 1035.3(a).[4]

---

4. The note to subsection (a)(1) states:

"If the moving party has supported the motion with oral testimony only, the response may raise the defense that there is a genuine issue of material fact because the cause of action is dependent upon the credibility and demeanor of the witnesses who will testify at trial. See *Nanty-Glo v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932); *Penn Center House Inc. v. Hoffman*, 520 Pa. 171, 553 A.2d 900 (1989)."

The record may be supplemented by the non-moving party in order to controvert the evidence cited in support of the motion or to establish the facts essential to the cause of action or defense which the motion cites as not having been produced. See Pa.R.C.P. 1035.3(b).

"The entry of summary judgment is proper where the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Rush v. Philadelphia Newspapers Inc.,* 732 A.2d 648, 650-51 (Pa. Super. 1999). "[I]n determining whether summary judgment should enter, the record is . . . viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Manzetti v. Mercy Hospital of Pittsburgh,* 565 Pa. 471, 482, 776 A.2d 938, 945 (2001). Summary judgment is properly granted in cases which are free and clear of doubt. *Kelly v. Ickes,* 427 Pa. Super. 542, 547, 629 A.2d 1002, 1004 (1993). In this case, summary judgment was properly granted because contrary to plaintiffs' assertion there was no genuine issue concerning whether Mr. Cruz actually stole A Plus' truck.

First, A Plus provided evidence that Mr. Cruz stole its truck. Ms. Locke testified in some detail as to how Mr. Cruz stole the truck out of the A Plus warehouse after it was left unattended by an A Plus mechanic who had left for lunch; that this was not the truck provided to the subcontractor for the moving job Mr. Cruz was involved

with; and that A Plus did not even know the truck had been stolen out of the warehouse until it got a call from the police stating that the truck had been involved in the accident.[5] (Def.'s exhibit C, pp. 8-24.)

Second, plaintiffs did not controvert the evidence cited in support of the motion or provide or point to evidence establishing Mr. Cruz had A Plus' permission to operate the vehicle in question. Initially, plaintiffs argued that because neither A Plus nor Mr. Cruz responded to the requests for admissions "which were served upon each defendant with plaintiff's complaint[,] . . . it is now admitted that defendant, Efrain Cruz, had permission from defendant, A Plus Movers, to operate their vehicle when he had the accident with plaintiff[s]." (Pls.' resp. ¶¶6-10.) Assuming arguendo A Plus was served with and did not respond to the request for admissions, which plaintiffs attached to their response to the motion for summary judgment (pls. resp., exhibit A), this request would not establish Mr. Cruz had permission from A Plus to operate the truck involved in the accident. As A Plus argued, the relevant matter of which an admission was purportedly requested— "Answering defendant had the permission of the owner of the vehicle he/she was operating at the time of the accident with plaintiff as specified in plaintiff's complaint[,]" (Pls. resp., exhibit A ¶4)—was not ap-

---

5. According to the police report provided by plaintiffs, the accident occurred at 12:35 p.m. and the police arrived at 12:50 p.m. (Pls.' resp., exhibit B.) Ms. Locke testified the mechanic's normal lunch hour was 12 to 1, but that it could vary depending upon what he was working on. (Def.'s exhibit C, p. 15.)

plicable to it, as A Plus was the owner of the vehicle and not the operator. Further, assuming Mr. Cruz was served with and did not respond to this same request for admission, Mr. Cruz' deemed admission cannot be used against A Plus.[6]

With regard to the police report, it did not show what plaintiffs claimed. In this case, plaintiffs supplied the police report and used it as evidence from which they argued "a question of fact can be raised as to whether Mr. Cruz actually stole [A Plus'] vehicle." (See pls.' resp. ¶16.) Relying on the police report, plaintiffs claimed that

---

6. In this case, plaintiffs did not cite any authority that would support binding A Plus with Mr. Cruz' purported deemed admission. However, neither did A Plus cite to any authority in support of its proposition that "[t]o the extent that the requests are binding on Mr. Cruz because he did not answer them, they also are not binding on A Plus." (Def.'s reply p. 3.) While the parties did not cite to any authority in support of their respective positions and we did not find any Pennsylvania case law on point, this court was persuaded by federal case law holding "[d]eemed admissions by a party opponent cannot be used against a co-party." *Becerra v. Asher,* 105 F.3d 1042, 1048 (5th Cir. 1997), accord *Riberglass Inc. v. Techni-Glass Indus. Inc.,* 811 F.2d 565, 566 (11th Cir. 1987). In *Becerra* the plaintiff brought an action against a school district, three school administrators, and a music teacher following the teacher's sexual molestation of the minor plaintiff. 105 F.3d at 1044. Following the grant of summary judgment in favor of all the defendants except the teacher, the plaintiffs appealed to the circuit court arguing, in part, that the district court "erred in not considering [the teacher's] deemed admissions as evidence against the other defendants." See *id.* at 1048. In affirming, the court noted the teacher failed to answer the request for admissions propounded upon him when he was in jail and representing himself. *Id.* The court, however, held "[t]here was no error in disregarding these admissions[,]" concluding "[d]eemed admission by a party opponent cannot be used against a co-party." *Id.*

"after the accident, Mr. Cruz did not flee the scene." *(Id.)* Plaintiffs also claimed that it was clear from the police report that it was Mr. Cruz who had provided the investigating officer with the vehicle's registration card and insurance information. *(Id.)* Plaintiffs argued "[t]hese actions by Mr. Cruz certainly called into question . . . whether the vehicle he was driving had been 'stolen' as . . . alleged by [A Plus]." *(Id.)*

Unfortunately for plaintiffs, their argument was contradicted by the very police report they provided. Foremost, the police report rather clearly indicated that Mr. Cruz had fled the scene. On the form pertaining to Mr. Cruz specifically, Mr. Cruz' presence was marked as "3," which equates to "driver fled scene." (Pls.' resp., exhibit B.) And the officer's narrative description of the accident provided in pertinent part:

"The witness, and the drivers of veh. nos. 3, 4 stated they obs. a H/M, light complexion, bald w/glasses, wearing a blue A Plus Movers t-shirt and jean shorts, exit the d-side of veh. no. 1 and leave the scene S/B on 5th Street. Flash info was provided and the male was stopped and positively id'd by the witnesses. He was completely incoherent and appeared to be under influence of a narcotic. He was transp. to Temple . . . and arrested for DUI."[7] (Pls.' resp., exhibit B.)

Further, the police report gave no indication who supplied the police with the pertinent vehicle information,

_____

7. Vehicle number one, or "veh. no. 1," referred to the A Plus moving truck involved in the accident.

etc. And even if it did indicate that Mr. Cruz supplied the police with this information after fleeing the scene and being apprehended, this would not "call[] into question . . . whether the vehicle he was driving had been 'stolen'" as argued by plaintiffs.[8]

With no genuine issue concerning whether Mr. Cruz actually stole A Plus' truck, summary judgment was properly entered in this case. We also rejected plaintiffs' alternate theory of liability. Plaintiffs' alternate theory of liability was that even if Mr. Cruz had stolen the truck, A Plus "would be responsible for plaintiff's [sic] injuries since their actions were in contradiction of company policy so as to make it possible for Mr. Cruz to gain access to one of their trucks and cause this accident." (See pls.' resp. ¶20.)

"[T]he elements of a negligence-based cause of action are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss." *Minnich v. Yost,* 817 A.2d 538, 541 (Pa. Super. 2003). "When considering the question of duty, it is

---

8. In this case, plaintiffs did not raise a defense based upon *Nanty-Glo,* but rather relied on the record (including their supplementation thereof with the police report and the purported deemed admissions) in arguing there was a genuine issue of material fact concerning whether Mr. Cruz stole the A Plus truck involved in the accident (see pls.' resp. ¶16); thus, any such issue is now waived. See *e.g., Lineberger v. Wyeth,* 894 A.2d 141 (Pa. Super. 2006) (holding the plaintiff's *Nanty-Glo* appeal argument waived where the plaintiff's "opposition to summary judgment and Rule 1925(b) statement failed to mention the *Nanty-Glo* rule."). Moreover, the summary judgment record supported entering judgment in this case. Rather than controverting A Plus' evidence, plaintiffs' evidence supported entering summary judgment in this case.

necessary to determine whether a defendant is under any obligation for the benefit of the particular plaintiff . . . and, unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence." *Id.* (quotations omitted) "Duty, in any given situation, is predicated upon the relationship existing between the parties at the relevant time." *J.E.J. v. Tri-County Big Brothers/Big Sisters,* 692 A.2d 582, 584 (Pa. Super. 1997) (quoting *Hoffman v. Sun Pipe Line Co.,* 394 Pa. Super. 109, 114, 575 A.2d 122, 125 (1990), in turn quoting *Alumni Ass'n v. Sullivan,* 369 Pa. Super. 596, 600-602, 535 A.2d 1095, 1098 (1987)). "Where the parties are strangers to each other, such a relationship may be inferred from the general duty imposed on all persons not to place others at risk of harm through their actions." *Id.*

Here, the summary judgment record showed plaintiffs and A Plus were strangers. Absent any special relationship between these parties, the only duty A Plus owed plaintiffs was the general duty imposed on all persons not to place others at risk of harm through their actions. "The scope of this duty, however, is limited to those risks that are reasonably foreseeable by the actor in the circumstances of the case." *Zanine v. Gallagher,* 345 Pa. Super. 119, 123, 497 A.2d 1332, 1334 (1985).

In this case, even assuming A Plus (through its employees) was negligent in permitting the truck to be left in the unlocked warehouse unattended with the keys inside when the mechanic went to lunch, the record does not support finding A Plus could have foreseen this care-

lessness would result in the harm suffered by the plaintiffs. Therefore, plaintiffs' alternate theory of liability fails as A Plus has not been shown to have violated any duty of care owed to plaintiffs under the circumstances of this case. In *Liney v. Chestnut Motors Inc.,* 421 Pa. 26, 218 A.2d 336 (1966), the Supreme Court of Pennsylvania addressed a case where the plaintiff sued an automobile repair garage after being struck by a car that had been left with the garage for repairs, but was subsequently stolen. In that case, after the owner delivered his car to the garage for repairs, "the garage's employees allowed the car to remain double-parked in the street outside the garage building with the keys in the ignition." *Roche,* 879 A.2d at 791 (discussing *Liney*). "Three hours later, the car was stolen by an adult stranger who drove it carelessly, striking the plaintiff-pedestrian on a sidewalk." *Id.* The "[d]efendant's garage was located in a Philadelphia area experiencing a high and increasing number of automobile thefts in the immediate preceding months." *Liney,* 421 Pa. at 28, 218 A.2d at 337. On these facts, the trial court "sustained the defendant garage's preliminary objections in the nature of a demurrer." *Roche,* 879 A.2d at 791.

In affirming, the court concluded that, even assuming that the employees were negligent, the garage could not have foreseen that its employees' carelessness would result in harm to the plaintiff and, therefore, the defendant garage violated no duty owed to the plaintiff. *Liney,* 421 Pa. at 28, 218 A.2d at 337-38. The court, however, further concluded that "even assuming that the defendant garage should have foreseen the likelihood of theft, nothing existed that would have put the garage on notice that the

thief would be an incompetent driver." *Roche,* 879 A.2d at 791-92 (citing *Liney,* 421 Pa. at 28, 218 A.2d at 338). Accordingly, the court also stated: "Under the circumstances, the thief's careless operation of the automobile was a superseding cause of the injury suffered, and defendant's negligence, if such existed, only a remote cause thereof upon which no action would lie." *Liney,* 421 Pa. at 28, 218 A.2d at 338.

In this case, we concluded as in *Liney* that A Plus violated no duty owed to plaintiffs as even if it was negligent in permitting the truck to be left in the unlocked warehouse unattended with the keys inside while the mechanic went to lunch, it could not have foreseen this carelessness would result in the harm suffered by plaintiffs. The circumstances of this case support this conclusion even more so than those in *Liney* did. In this case, the truck was stolen out of a warehouse rather than off a street. And unlike in *Liney,* there were no facts/evidence in this case suggesting A Plus' warehouse was in an area experiencing a high and increasing number of auto thefts. In short, the summary judgment record did not support charging A Plus with foreseeing the theft and plaintiffs' resulting injuries.

Further, as in *Liney,* this court also concluded that even assuming A Plus should have foreseen the likelihood of the theft of the truck, there was nothing in the record to support putting it on notice that the thief would be an incompetent driver. Thus, under the circumstances, we also concluded Mr. Cruz' careless operation of the truck was the superseding cause of plaintiffs' injuries and A Plus' negligence, if any, was too remote to support a

cause of action against it. In this case, the record did not support finding A Plus knew or should have known that the truck would likely be stolen by an incompetent driver. Compare *Anderson v. Bushong Pontiac Company Inc.*, 404 Pa. 382, 171 A.2d 771 (1961) (holding the plaintiff stated a sufficient cause of action against the owner of a used car lot where the owner had been put on notice that a car was likely to be stolen by an incompetent driver as keys to the car were stolen by a 14-year-old boy and the boy who stole the keys and other boys made a habit of playing around the cars in the lot). For example, there is no evidence that anyone from A Plus saw Mr. Cruz under the influence of a controlled substance, loitering around the truck. Rather, the record supported finding Mr. Cruz' careless operation of the stolen truck was a superseding cause of plaintiffs' injuries, for which A Plus cannot be liable.

In conclusion, it seems clear the underlying reason plaintiffs wanted A Plus to remain in the case is because they were the insured entity and Mr. Cruz, if he ever can be located, is more than likely judgment proof. While we can empathize with plaintiffs and acknowledge their likely frustration in Mr. Cruz' escaping financial responsibility, that does not justify holding A Plus in this case. Discovery was closed and plaintiffs were not able to produce any evidence to meet their burden of establishing responsibility on the part of A Plus. Summary judgment exists to end a case when it is clear a party cannot demonstrate it will be able to meet its burden. We do not take lightly denying plaintiffs their day in court, but in this case it is not warranted and summary judgment was properly granted.