Paul L. MINNICH, Appellant

v.

Harry B. YOST, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 15, 2002.

Filed Feb. 10, 2003.

G. Thomas Miller, Camp Hill, for appellant.

Scott E. Yaw, Malvern, for appellee.

Before: STEVENS, TODD, and CAVANAUGH, JJ.

STEVENS, J.

¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Lancaster County granting Appellee Harry B. Yost, Esq.'s motion for judgment on the pleadings and dismissing Appellant Paul L. Minnich's Complaint. Minnich argues that the trial court erred in concluding that Minnich could establish civil liability on neither his malpractice claim nor his statutory-based claim of intentional concealment of a will. For the following reasons, we affirm.

¶ 2 As contained in Minnich's Complaint filed on December 11, 2000, the pleadings aver that Minnich's mother, Vera L. Minnich, died on January 14, 1997. In either July or October, 1997, Minnich's father consulted with Attorney Yost for advice on estate planning. At that time or at some time later, he delivered both his own will and the will of his deceased wife to Yost.[1] At the consultation, Yost knew or was advised of Vera Minnich's death, and he knew or should have known that her will had not yet been probated. Nevertheless, Yost did not advise Minnich's father to

---

1. According to the Complaint, Yost did not participate in the preparation of Vera Minnich's will.

have Vera Minnich's will probated, took no initiative to have the will probated, and never advised Minnich's father to notify other family members of the existence of the will.

¶ 3 Meanwhile, Minnich's own inquiry into his mother's estate had, to that point, failed to disclose if his mother had prepared any letters testamentary or if she had instead simply died intestate. Retaining counsel to assist him, Minnich obtained from the Lancaster County Register of Wills a Citation to Show Cause why Letters of Administration Should Not Be Issued to [him], which was served on Minnich's father on December 16, 1997. Minnich's father brought the Citation to Yost, and on or about December 29, 1997, Yost delivered Vera Minnich's will to the Register of Wills.

¶ 4 Under the terms of his mother's valid and subsisting will, Minnich was named co-executor of the estate, co-trustee of a trust created by the will, and was awarded a substantial beneficial interest in his mother's estate. Administration of the estate commenced shortly after receipt of the will.

¶ 5 The pleadings conclude with allegations that Yost is civilly liable for negligence, on respective theories of malpractice and of violating a criminal statute prohibiting the fraudulent concealment of a recordable instrument, in connection with his failure to effect the immediate probate of Vera Minnich's will. It is further averred that Yost's inaction cost Minnich $1,973 in fees for the discovery of the will, and caused Minnich to experience "emotional and physical distress, anxiety, pain and suffering, debilitating frustration, and mental trauma" because of the "uncertainty as to the administration and devolution of his mother's estate." The Complaint demands judgment against Yost not in excess of $35,000 in compensatory and punitive damages.

¶ 6 On February 20, 2001, Yost filed his Answer with New Matter to Minnich's Complaint, wherein he denied owing any duty to Minnich, denied any duty to produce or probate Vera Minnich's will, and averred that any damages Minnich may have sustained stemmed from other sources. After Minnich filed his reply to Yost's New Matter, Yost filed a Motion for Judgment on the Pleadings. On June 28, 2001, the trial court granted Yost's motion and dismissed Minnich's Complaint with prejudice. This timely appeal followed.

¶ 7 Minnich raises three claims on appeal:

A. WHEN A STATUTE PROHIBITS THE INTENTIONAL CONCEALMENT OF A WILL WITH THE INTENT TO DECEIVE SOMEONE, DOES THE VIOLATION OF THAT STATUTE ESTABLISH PER SE LIABILITY TO A PERSON WHO HAS INCURRED DAMAGES BECAUSE OF THAT CONCEALMENT?

B. WHEN AN ATTORNEY IS CONSULTED FOR LEGAL ADVICE BY A FAMILY MEMBER OF A PERSON WHO HAD RECENTLY DIED AND THAT ATTORNEY TAKES AND KEEPS POSSESSION OF THE DECEDENT'S WILL, COULD A FINDER OF FACT DETERMINE THAT THE ATTORNEY AGREED TO PROVIDE LEGAL SERVICES TO THE DECEDENT'S ESTATE?

C. IS THE PERSON WHO IS NAMED AS EXECUTOR IN A DECEDENT'S WILL A THIRD PARTY BENEFICIARY TO ANY AGREEMENT TO PROVIDE

LEGAL SERVICES TO THAT DECEDENT'S ESTATE?

Brief for Appellant, at 4.

■ ¶ 8 In passing on a challenge to the sustaining of a motion for judgment on the pleadings, our standard of review is limited. *Lindstrom v. City of Corry,* 563 Pa. 579, 763 A.2d 394 (2000). We must accept as true all well pleaded statements of fact of the party against whom the motion is granted and consider against him only those facts that he specifically admits. *Weik v. Estate of Brown,* 794 A.2d 907 (Pa.Super.2002). We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise. *Id.*

■ ¶ 9 All of Appellant's claims sound in negligence. It is axiomatic that the elements of a negligence-based cause of action are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss. *Campo v. St. Luke's Hospital,* 755 A.2d 20 (Pa.Super.2000). When considering the question of duty, it is necessary to determine "whether a defendant is under any obligation for the benefit of the particular plaintiff. . .and, unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence." *J.E.J. v. Tri–County Big Brothers/Big Sisters,* 692 A.2d 582, 584 (Pa.Super.1997) (citation omitted).

¶ 10 We are first asked to address whether recovery was impossible on the claim that Yost violated a criminal statute prohibiting the intentional concealment of a will. 18 Pa.C.S.A. § 4103 provides in pertinent part that "[a] person commits a felony of the third degree if, with intent to deceive or injure anyone, he destroys, removes or conceals any will. . .or other writing for which the law provides public recording."

■ ¶ 11 The violation of a statute may serve as the basis for a finding of negligence *per se.* This concept establishes both duty and breach of duty where an individual violates an applicable statute designed to prevent a public harm. *Campo, supra.* "[I]n analyzing a claim based on negligence *per se,* the purpose of the statute must be to protect the interest of a group of individuals, as opposed to the general public, and the statute must clearly apply to the conduct of the defendant." *Tri–County Big Brothers/Big Sisters,* 692 A.2d at 585. Accordingly, courts in this Commonwealth have imposed a "narrow interpretation of what type of person falls within the ambit of a statute designed to protect the public at large[, and the] requirement that the harm suffered be that which the statute was designed to protect." *Campo,* 755 A.2d at 26 (citing *Witthoeft v. Kiskaddon,* 557 Pa. 340, 733 A.2d 623 (1999); and *Klein v. Raysinger,* 504 Pa. 141, 470 A.2d 507 (1983)).

■ ¶ 12 It is clear from the Official Comment to Section 4103 that the statutory purpose involved in no way distinguishes beneficiaries from the general public. "This section is intended to be limited to writings, the destruction, removal or concealment of which *could lead to falsification of public records.*" § 4103, Official Comment—1972 (emphasis added). The overriding mission of the statute, therefore, is to preserve the accuracy, integrity, and reliability of public records. Named beneficiaries under writings which collectively make up public records undeniably profit from the statute, but their interests are clearly not the foremost concern of the statute. Accordingly, we refuse to imply a private cause of action in favor of Minnich-as-beneficiary under a statute which addresses the issue of the

general public's confidence in their records.`

¶ 13 Minnich's second and third issues combine to state that he has standing to bring a negligence claim for breach of duty owed him as an intended third party beneficiary of Yost's implied contract to represent Vera Minnich's estate. To support this claim, Minnich relies on pleaded facts that: Minnich's father consulted with Yost for advise on estate planning, told Yost that Vera Minnich had died, and gave Yost both his and her valid wills; Yost took the wills and noticed that Vera's had not been probated, but kept it in his possession without effecting probate or assuring that Minnich-as-named-beneficiary be informed of the will's existence; as an experienced attorney and officer of the court, Yost had a duty to promptly effect probate and to promptly advise Minnich of his beneficial interest in the will; Yost's failure to produce the will for probate until Minnich requested the register of wills to issue a citation directing production was intentional, and it cost Minnich considerably both in the way of fees connected with the discovery of the will and in non-economic damages.

¶ 14 First, we agree that the complaint alleged sufficient facts to aver that Minnich's father and Yost entered into an implicit contract for legal services pertaining to Vera Minnich's estate. "Absent an express contract, an implied attorney-client relationship will be found if 1) the purported client sought advice or assistance from the attorney; 2) the advice sought was within the attorney's professional competence; 3) the attorney ex-

pressly or impliedly agreed to render such assistance; and 4) it is reasonable for the putative client to believe the attorney was representing him." *Cost v. Cost*, 450 Pa.Super. 685, 677 A.2d 1250, 1254 (1996). Here, the pleadings satisfy the standard's first two factors with the averment that Minnich's father conferred with Yost for his competent legal advice. Moreover, by averring that Yost knowingly accepted and kept possession of the original will of Vera Minnich, whom Yost knew to have recently died, the pleadings satisfied the third and fourth factors that Yost impliedly agreed to assist the estate and that Minnich's father reasonably believed such assistance would commence.

¶ 15 We turn, then, to Minnich's contention that he is a third party beneficiary with standing to press his action. In support of his position, Minnich relies on the plurality decision in *Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983) (Plurality), wherein the Supreme Court retained privity (an attorney-client or analogous professional relationship, or a specific undertaking) as an element of proof necessary to maintain an action in negligence for professional malpractice, with the only exception being "a narrow class of third party beneficiaries...under Restatement (Second) of Contracts § 302 [2] *where the intent to benefit is clear and the promisee (client) is unable to enforce the contract."* *Guy*, 501 Pa. at 51, 459 A.2d at 747 (footnote added) (emphasis added). *See also Cardenas v. Schober*, 783 A.2d 317, 322 (Pa.Super.2001) (relying on *Guy* and § 302 to determine whether plaintiffs fell within narrow class of lega-

---

**2.** The test under § 302 to determine the existence of an intended beneficiary comprises a two-step inquiry, requiring that (1) the recognition of the beneficiary's right must be "appropriate to effectuate the intention of the parties," and (2) the performance must "satis-

fy an obligation of the promisee to pay money to the beneficiary" or "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance."

tees that may bring suit under third party beneficiary theory.)

¶ 16 It is readily apparent, however, that Minnich's case is distinguishable from the line of cases that adopted § 302 to give legatees their only recourse when malpractice had denied them their expectancies under wills. Of primary importance is that there is no indication in the complaint that the promisee (Minnich's father) in the contract at issue was unable to enforce the contract with Yost. Indeed, at the time Minnich incurred legal fees connected with his efforts to produce his mother's will, his father was still alive and could have enforced the implied contract with Yost to represent Vera Minnich's estate competently.

¶ 17 Second, unlike the manifest intention of a testator and attorney drafter of a will to benefit the legatees expressly named in the will, the manifest intention of Minnich's father and Yost would seem to have been to benefit the estate of Vera Minnich. That Minnich stood to gain from the probate of Vera Minnich's will appears but a consequence of Minnich's father's primary and manifest intent to take care of his wife's estate. This distinction is of obvious critical importance because third party beneficiary theory does not apply to a case where the plaintiff was not the intended beneficiary of the contract between client and attorney.

¶ 18 Finally, we note that the "narrow class of legatees that may bring suit under the third party beneficiary theory" has been permitted to do so because legatees therein would otherwise have no means by which to obtain their expectancies under the testamentary instruments naming them. Here, Minnich took his expectancy under Vera Minnich's will upon its probate.

¶ 19 Therefore, we find that the implied contract between Minnich's father and Yost to handle the estate of Vera Minnich does not manifest the intent to benefit Minnich. This finding is fatal to the cause of action as stated before us, as Minnich's status as intended beneficiary of the implied contract was a necessary predicate to his second negligence claim for damages.

¶ 20 For the foregoing reasons, we affirm.