Delissa WILSON, Appellant

v.

**PECO ENERGY COMPANY and Exelon Corporation, Appellee.**

Superior Court of Pennsylvania.

Argued July 18, 2012.

Filed Dec. 20, 2012.

---

* Retired Senior Judge assigned to the Superior Court.

Dale G. Larrimore, Philadelphia, for appellant.

Kellie A. Allen, Philadelphia, for appellee.

BEFORE: MUSMANNO, MUNDY, and FITZGERALD,* JJ.

OPINION BY MUNDY, J.:

Appellant, Delissa Wilson, appeals from the November 1, 2010 order granting summary judgment in favor of Appellee, PECO Energy Company (PECO).[1] Because we find issues of material fact exist which preclude the entry of summary judgment, we reverse and remand for proceedings consistent with this opinion.

The relevant facts and procedural history of this case, as summarized by a prior panel of this Court, are as follows.

In November 2005, a vehicle driven by Mark Chiapetta ("Chiapetta") struck [Appellant] at the intersection of Trooper Road and Betzwood Drive in West Norriton, Montgomery County, as she attempted to reach a SEPTA[1] bus stop. [Appellant] subsequently filed two lawsuits, both sounding in negligence. [Appellant] first filed suit against Chiapetta, the Pennsylvania Department of Transportation ("PENNDOT"), and West Norriton Township. [Appellant] then filed a separate suit against PECO and its corporate parent Exelon Corporation ("Exelon"). PECO owned and maintained the streetlight at the intersection in question, and [Appellant] alleged that the streetlight did not adequately illuminate the entire roadway.

On June 5, 2008, the trial court entered an order consolidating the two cases "for all purposes including discovery and trial." On December 8, 2008, PECO filed a motion for leave to join SEPTA as an additional defendant, which the trial court granted on January 21, 2009. On March 20, 2009, SEPTA filed an answer and new matter to PECO's joinder complaint, and on April 25, 2009 PECO filed a reply to new matter. On March 16, 2010, SEPTA filed a motion to amend its answer and new matter, which the trial court subsequently granted.

On June 4, 2010, PECO filed a motion for summary judgment seeking the dismissal of all claims in [Appellant's] complaint. After oral argument, on November 1, 2010, the trial court granted summary judgment in favor of PECO. [Appellant] filed a Notice of Appeal la-

---

* Former Justice specially assigned to the Superior Court.

1. On April 4, 2012, counsel for West Norriton Township filed a letter in this Court indicating that it is not a party in this litigation and thus, will not be filing an appellate brief in this matter.

ter that same day. In accordance with the trial court's order to do so, on November 16, 2010 [Appellant] filed a Pa. R.A.P. 1925(b) concise statement of matters complained of on appeal. On December 16, 2010, all parties agreed to a stipulation of dismissal of Exelon. On December 23, 2010, the trial court filed a Pa.R.A.P. 1925(a) written opinion in support of its grant of summary judgment in favor of PECO.

[1] Southeastern Pennsylvania Transportation Authority ("SEPTA").

*Wilson, D. v. PECO,* 34 A.3d 231 (Pa.Super.2011) (unpublished memorandum) (footnote in original).

Thereafter, on September 19, 2011, this Court determined that "[t]he trial court's November 1, 2010 order ... did not dispose of all claims against all parties," as SEPTA was still a party to this litigation, and quashed Appellant's appeal as interlocutory. *Id.* On November 18, 2011, the trial court granted SEPTA's "Revised Motion for Judgment on the Pleadings," and dismissed all claims against it. This timely appeal followed on December 16, 2011.[2] Pursuant to the trial court's directive, Appellant filed a timely concise statement of matters complained of on appeal in accordance with Pa.R.A.P. 1925(b) on December 28, 2011. In lieu of filing a formal Rule 1925(a) opinion, the trial court indicated on January 6, 2012 that it was relying on its reasoning as set forth in its prior December 22, 2010 opinion.[3]

On appeal, Appellant raises the following issues for our review.

1. Did the [t]rial [c]ourt err in finding that Appellee PECO's duty to "maintain" the streetlights in West Norriton Township was satisfied by providing electricity and changing light bulbs every four years?

2. Did the [t]rial [c]ourt err in finding that Appellee PECO was entitled to Judgment as a Matter of Law where the undisputed facts are:

   A. PECO owned the streetlights at this intersection;

   B. PECO assumed the duty to "maintain" the streetlights at this intersection;

   C. The streetlight at this intersection was an "old regular house type bulb, that was installed when the roadway was two lanes" and "did little or nothing to light the area;"

   D. The streetlight at this intersection did not provide adequate lighting at the scene of this accident because it was "antiquated" and was placed at this location in July of 1970, when the roadway was a two-lane roadway;

   E. The streetlight in question was on an arm that extended just over the curb lane and not toward the middle of the highway, and it did not "handle the complete roadway" at this location;

   F. PECO failed to update or modernize this streetlight for 30 years, even though the road dou-

2. We note that Appellant's appeal is solely from the November 1, 2010 order granting PECO's motion for summary judgment, and not the November 18, 2011 order dismissing all claims against SEPTA.

3. On March 5, 2012, this Court directed Appellant to show cause as to the basis of this Court's jurisdiction over this matter. Superi-

or Court *Per Curiam* Order, 3/5/12. Appellant filed a response to said order on March 9, 2012, indicating that SEPTA is no longer a party to this litigation and that this case falls within the exclusive jurisdiction of this Court. Appellant's Statement in Support of Jurisdiction of Superior Court Over this Appeal, 3/9/12, at ¶¶ 9–20. Upon review, we agree.

bled in width and the traffic volume increased and pedestrians regularly crossed at this intersection;

G. PECO failed to update and modernize street lighting on this roadway with new technology lights that would have made the intersection safe for the activities for which it was regularly used;

H. The streetlights at this intersection on the evening of the accident were not safe for pedestrians attempting to cross Trooper Road.

Appellant's Brief at 4. For the purposes of our review, we have elected to address Appellant's claims simultaneously.

In reviewing a trial court's grant of summary judgment, we are guided by the following scope and standard of review.

Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Cassel–Hess v. Hoffer,* 44 A.3d 80, 84–85 (Pa.Super.2012) (citations omitted).

A plaintiff who brings an action sounding in negligence must establish the following four elements: "1. [a] duty or obligation recognized by law[,] 2.[a] breach of the duty[,] 3. [c]ausal connection between the actor's breach of the duty and the resulting injury[, and] 4. [a]ctual loss or damage suffered by complainant." *Cooper v. Frankford Health Care System, Inc.,* 960 A.2d 134, 140 n. 2 (Pa.Super.2008) (citation omitted), *appeal denied,* 601 Pa. 679, 970 A.2d 431 (2009). The plaintiff has the burden of proving all of the above elements. *Feeney v. Disston Manor Personal Care Home, Inc.,* 849 A.2d 590, 594 (Pa.Super.2004), *appeal denied,* 581 Pa. 691, 864 A.2d 529 (2004).

Additionally, Pennsylvania has adopted section 323 of the Restatement (Second) of Torts, which provides as follows.

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 323. *See Unglo v. Zubik,* 29 A.3d 810, 813 (Pa.Super.2011) (stating, "[s]ection 323 [of the Restatement (Second) of Torts] has been adopted as the law in Pennsylvania[ ]") (citations omitted).

Herein, Appellant contends that PECO had a duty to "maintain" the streetlight in question that extended beyond "providing electricity and changing light bulbs every four years." Appellant's Brief at 4, 11. Appellant avers PECO is responsible for using reasonable care in its maintenance

including updating the light fixture and its brightness. *Id.* at 11–13. PECO, in turn, concedes that they own the streetlight in question and have the duty to maintain it, but aver that changing the light every four years and providing electricity discharged its obligation. *See* PECO's Brief at 11–20. The trial court concluded that, "[PECO] is entitled to summary judgment as a matter of law" because Appellant failed to prove that PECO had a duty to "updat[e] and moderniz[e] streetlights with new technology lights to ensure the safety of pedestrians who cross the roadway." Trial Court Opinion, 12/22/10, at 3.

■ Upon careful review of the evidence, viewed in the light most favorable to Appellant as the non-moving party, we are compelled to disagree with the trial court's conclusions. Our review of the pleadings, depositions, and exhibits in this matter reveals that there is a genuine issue of material fact with regard to PECO's duty to "properly maintain" the streetlight in question. Contrary to the trial court's determination, there exists a genuine issue of material fact with regard to whether PECO undertook its duty with reasonable care. Likewise, there are facts upon which a jury could conclude that PECO's duty extended **beyond** merely providing electrical service and hiring another company [4] to change the light bulbs every four years. *Id.; see also* Deposition of Marie M. Hoey, 7/16/09, at 8, 50–51.

■ As noted, "[o]ne who undertakes" a duty, like PECO in the instant matter, "is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care ..." RESTATEMENT (SECOND) OF TORTS § 323. This Court has long recognized that the determination of whether a defendant exercised reasonable care in the performance of a duty under section 323 is a question for the jury. *See e.g. Feeney, supra* at 596 (stating, "[a] jury would certainly be free to find that defendants' failure to [supervise the decedent and monitor his whereabouts] does not constitute reasonable care[ ]"); *Filter v. McCabe,* 733 A.2d 1274, 1277 (Pa.Super.1999) (holding, a claim under section 323 that the defendant was negligent in caring for the plaintiff after his fall "was for a jury to determine factually" and it was for a jury to determine whether "there is liability on the part of [the defendant]"), *appeal denied,* 563 Pa. 645, 758 A.2d 1200 (2000).

Herein, although PECO acknowledges a duty to "properly maintain" the streetlight in question, there exists a genuine issue of material fact with regards to whether said duty was undertaken with the reasonable care necessary to protect individuals crossing Trooper Road in the face on oncoming traffic. First, the record reveals that the streetlight in question was by all reasonable accounts, outdated, and that PECO had failed to update the light fixture for more than three decades. Marie M. Hoey, an account manager for PECO that has been employed by the company for 25 years, testified that the light fixture in question was installed on July 7, 1970, and that PECO had never replaced the luminaire in over 35 years of "maintenance." Deposition of Marie M. Hoey, 7/16/09, at 5–6, 26–28. Likewise, West Norriton Police Officer Alfonso A. Fazio, who conducted the initial investigation of the accident scene, described this light in his accident report as an "antiquated" and "old, regular type light [that] was installed when the roadway was two (2) lanes." Police Accident Report, 11/8/05, at 3, 6. Officer Fazio further noted that all of the streetlights in

---

4. The record indicates that PECO contracted with M.J. Electric to replace the bulbs in the streetlights. *See* Deposition of Marie M. Hoey, 7/16/09, at 50.

West Norriton Township "used to be all the regular plain light bulbs," but that PECO "converted over to the fluorescent type or the brighter lighting type over the years ... pretty much everywhere" except the intersection in question. Deposition of Officer Alfonso A. Fazio, 7/21/08, at 27.

Second, the record indicates that the arm of the streetlight in question did not properly extend over the roadway, despite the fact that the road was widened from a school crossing to four lanes and that traffic had increased since 1970. Deposition of Marie M. Hoey, 7/16/09, at 21–22; Deposition of Officer Alfonso A. Fazio, 7/21/08, at 22, 25, 41. Specifically, Officer Fazio, testified as follows.

> The street light that was in that location, which was on a pole, was extending over just the curb lane just into the center lane, not over top of the center lane, or not over to the middle of the roadway.... It just doesn't extend over towards the middle of the highway.

Deposition of Officer Alfonso A. Fazio, 7/21/08, at 22.

Next, the evidence establishes that the streetlight did not provide adequate lighting for the area. Our review of the police accident report reveals that after completing his investigation, Officer Fazio concluded that, "the operator of the striking vehicle[, Mark Chiappetta,] was not able to observe the pedestrians until the distance to them was at a point where he was unable to avoid striking [Appellant]." Police Accident Report, 11/8/05, at 6. Officer Fazio further opined that the streetlight "did little or nothing to light the area," and "did not light the roadway up very brightly" or "handle the complete roadway." *Id.* at 3; Deposition of Officer Alfonso A. Fazio, 7/21/08, at 22, 25–26. Likewise, in his deposition testimony, Chiappetta notes that Trooper Road "was dark ... pro-

foundly dark." Deposition of Mark Chiappetta, 12/11/07, at 17.

Lastly, our review of the deposition testimony on behalf of both PECO and West Norriton Township reveals a genuine issue of material fact with regards to which entity possessed a duty to determine the brightness of the bulb in the streetlight. Marie M. Hoey testified that West Norriton Township was responsible for determining the "brightness of bulb, the lumen level" on the streetlight in question, and that PECO merely followed the township's instructions. Deposition of Marie M. Hoey, 7/16/09, at 5–6, 43, 48–49. On the contrary, the testimony of Thomas F. Cinaglia, the Director of Public Works for West Norriton Township, suggests that these lightning issues were the sole responsibility of PECO.

Q. Am I correct then that it is your understanding that PECO installed this light on pole 44219 at the intersection?

A. Correct.

Q. After PECO installed that light did West Norriton Township ever request that the type of light fixture or light bulb be changed in any way?

A. Not to my knowledge.

Q. Did West Norriton Township ever request that a brighter light bulb be placed in that light fixture?

A. Not to my recollection.

. . .

Q. Do you have any knowledge or information concerning the wattage or the lumen level of any of the lights that are on—the streetlights anywhere in West Norriton Township?

A. No.

Q. One of the areas that I indicated that I would be going to ask about today in the deposition, item number 15 was the following:

Whether or not West Norriton Township had any policy procedure or general practice concerning the inspection of streetlights within the township to determine broken, missing, burnt out, too dim or no longer illuminating the area properly, and if so the details about that inspection procedure, policy or practice.

I sort of asked this before, although, not using those words and you have indicated to me that the procedure that West Norriton Township had was complaints by citizens and reports by police officers; is that correct?

A. That is correct.

Q. And there is no other policy, procedure or practice?

A. No.

Q. I think I asked you if you ever asked for advice from PECO about the brightness or the wattage of the light bulbs and you told me no.

Did PECO ever recommend to the township that any changes be made in the wattage or lumen level or brightness of the streetlights?

MR. DIANNO: Objection to the form. You may answer.

[A.] No.

Deposition of Thomas F. Cinaglia, 1/20/09, at 19, 35–36.

This Court has recognized "[t]he determination of whether an act ... constitutes negligence, **of any degree,** in view of all the evidence has always been particularly committed to determination by a jury." *Snead v. Society for Prevention of Cruelty to Animals of Pennsylvania,* 929 A.2d 1169, 1183 (Pa.Super.2007) (citation omitted; emphasis added), *affirmed,* 604 Pa. 166, 985 A.2d 909 (2009), *appeal denied,* 606 Pa. 651, 992 A.2d 890 (2010). Herein, as noted, the record clearly demonstrates there are genuine issues of material fact upon which a jury could conclude that PECO failed in its duty to "maintain" the streetlight with reasonable care by merely "providing electricity and changing light bulbs every four years." *See* Appellant's Brief at 4, 11; PECO's Brief at 11–20.[5]

Accordingly, for the foregoing reasons, we reverse the trial court's November 1, 2010 order granting summary judgment in favor of PECO and remand for further proceedings.

Order reversed. Case remanded. Jurisdiction relinquished.

Justice JAMES FITZGERALD files a Dissenting Opinion.

### DISSENTING OPINION BY FITZGERALD, J.:

I respectfully dissent. To the extent Appellant contends that PECO failed its contractual duty to West Norriton Township to maintain the streetlight by providing electricity and changing the light bulbs, and that such failure resulted in Appellant's harm, *see* Appellant's Brief at 11–12, I would hold that proximate cause

---

5. Our extensive review of the case law of this Commonwealth yields no controlling authority on the precise duties a utility company owes with regard to streetlights it owns and maintains. Furthermore, the cases relied on by the trial court, *Flatley v. Upper Darby Township,* 56 Pa. D. & C.2d 179 (Pa.Com.Pl. 1972), and *Dattner v. Lamm,* 5 Pa. D. & C.2d 552 (Pa.Com.Pl.1956), are clearly distinguishable from the instant matter. *See* Trial Court Opinion, 12/22/10, at 4–5. *Flatley* and *Datt-*

*ner,* unlike the case *sub judice,* involve situations where there were no operating streetlights and the pedestrians were on notice that there was a dangerous condition present. Additionally, these decisions are clearly not binding on this Court. *See Branham v. Rohm and Haas Co.,* 19 A.3d 1094, 1103 (Pa.Super.2011) (stating, "common pleas court decisions are not binding on appellate courts [in this Commonwealth]") (citations omitted), *appeal denied,* —— Pa. ——, 42 A.3d 289 (2012).

is lacking for her negligence cause of action under Section 323 of the Restatement (Second) of Torts, also known as the "Good Samaritan" rule. To the extent Appellant contends that PECO had a duty to "update and modernize" the streetlight in question because of increased traffic, *see id.* at 22, I would hold that she has not identified material issues of fact regarding PECO's knowledge of such a duty. Even assuming PECO had knowledge of such a duty, I would similarly conclude Appellant failed to identify material issues of fact regarding PECO's failure to perform that duty. A finding of liability under Section 323, I suggest, requires PECO's effort to "update and modernize" the streetlight.[1]

The record reflects that West Norriton Township made the decisions regarding the type, location, and installation of the streetlights. Ex. D. to Appellant's Mem. of Law in Support of the Mot. for Summ. J. of Appellee; R. 47a–48a. PECO had no involvement designing the lighting system for West Norriton Township and never engaged in lighting design for any township. *Id.*; R. 47a–48a. Undisputed is that PECO did not decide where to install the streetlights. *Id.* PECO, however, installed the streetlights based on West Norriton Township's requirements. *Id.* West Norriton Township requested the streetlight in question. *Id.*; R. 44a, 48a.

Further, West Norriton Township—and not PECO—decided how bright the streetlights are. *Id.*; R. 48a–49a. If someone from West Norriton Township contacted PECO to complain about the lighting, PECO would refer that person to the township for further action. *Id.*; R. 52a. Indeed, a West Norriton Township commissioner contacted PECO about installing brighter lights at a particular intersection and PECO responded by providing a cost estimate. *Id.*; R. 50a–51a.

"It is axiomatic that the elements of a negligence-based cause of action are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss." *Minnich v. Yost,* 817 A.2d 538, 541 (Pa.Super.2003) (citing *Campo v. St. Luke's Hosp.,* 755 A.2d 20, 23–24 (Pa.Super.2000)).

> While the existence of a duty is a question of law, whether there has been a neglect of such duty is generally for the jury. However, the issue of whether an act or a failure to act constitutes negligence may be removed from consideration by a jury and decided as a matter of law when the case is free from doubt and there is no possibility that a reasonable jury could find negligence.

*Emerich v. Phila. Ctr. for Human Dev., Inc.,* 554 Pa. 209, 233, 720 A.2d 1032, 1044 (1998) (affirming judgment on pleadings because facts as pleaded established defendant did not breach duty).

> When considering the question of duty, it is necessary to "determine whether a defendant is under any obligation for the benefit of the particular plaintiff ... and, unless there is a duty upon the defendant in favor of the plaintiff which has been breached, there can be no cause of action based upon negligence."

*Minnich,* 817 A.2d at 541 (quoting *J.E.J. v. Tri–County Big Brothers/Big Sisters, Inc.,* 692 A.2d 582, 584 (Pa.Super.1997)).

With respect to duty:

> Duty, in any given situation, is predicated upon the relationship existing between the parties at the relevant time. Where the parties are strangers to each other, such a relationship may be in-

---

1. The certified record is missing the documents associated with the first 150 docket entries.

ferred from the general duty imposed on all persons not to place others at risk of harm through their actions. The scope of this duty is limited, however, to those risks which are reasonably foreseeable by the actor in the circumstances of the case.

Only when the question of foreseeability is undeniably clear may a court rule as a matter of law that a particular defendant did not have a duty to a particular plaintiff. *Migyanko v. Thistle [th]waite*, 275 Pa.Super. 500, 419 A.2d 12, 14 (1980); *[see also] Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99, 100 (1928). Moreover, the question of foreseeability is not to be confused with the question of legal or proximate causation. Even where harm to a particular plaintiff may be reasonably foreseeable from the defendant's conduct, and that conduct is the cause-in-fact of the plaintiff's harm, the law makes a determination that, at some point along the causal chain, liability will be limited. The term "proximate cause", or "legal cause" is applied by courts to those considerations which limit liability, even where the fact of causation can be demonstrated.... To put it simply, at a certain point, negligent conduct will be viewed as too remote from the harm arising to the plaintiff, and thus not a substantial factor in bringing about the plaintiff's harm.

*Alumni Ass'n, Delta Zeta Zeta of Lambda Chi Alpha Fraternity v. Sullivan*, 369 Pa.Super. 596, 535 A.2d 1095, 1098 (1987) [hereinafter *Sullivan*] (some citations omitted). To reiterate: "a duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others." *Campo*, 755 A.2d at 24.

[I]f no care is due, it is meaningless to assert that a person failed to act with due care. Certain relations between parties may give rise to such a duty. Although each person may be said to have a relationship with the world at large that creates a duty to act where his own conduct places others in peril, Anglo–American common law has for centuries accepted the fundamental premise that mere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act.

*T.A. v. Allen*, 447 Pa.Super. 302, 669 A.2d 360, 362 (1995) (*en banc*) (citing *Wenrick v. Schloemann–Siemag Aktiengesellschaft*, 523 Pa. 1, 8, 564 A.2d 1244, 1248 (1989)).

Upon establishing a duty, the plaintiff must first demonstrate legal causation and then cause-in-fact. *See Reilly v. Tiergarten, Inc.*, 430 Pa.Super. 10, 633 A.2d 208, 210 (1993) ("Proximate cause is a question of law to be determined by the judge, and it must be established before the question of actual cause may be put to the jury." (some punctuation omitted)).

It is settled in the law that except in rare situations not here involved the mere occurrence of an injury does not prove negligence and that an admittedly negligent act does not necessarily entail liability; rather even when it is established that the defendant breached some duty of care owed the plaintiff, it is incumbent on a plaintiff to establish a causal connection between defendant's conduct and the plaintiff's injury. Stated another way, the defendant's conduct must be shown to have been the proximate cause of plaintiff's injury. Proximate cause is a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of defendant, ...; and it may be established by evidence that the defendant's negligent act or failure to act was a substantial factor in bringing

about the plaintiff's harm. The defendant's negligent conduct may not, however, be found to be a substantial cause where the plaintiff's injury would have been sustained even in the absence of the actor's negligence.

*Hamil v. Bashline*, 481 Pa. 256, 264–65, 392 A.2d 1280, 1284 (1978) (citations omitted).

It is well established in Pennsylvania that in order to find that defendant proximately caused an injury it must be found that his allegedly wrongful conduct was a substantial factor in bringing about plaintiff's injury even though it need not be the only factor. It is equally well established that defendant's negligent conduct is not a substantial factor in bringing about plaintiff's injury if it would have been sustained even if the actor had not been negligent.

*Majors v. Brodhead Hotel*, 416 Pa. 265, 271–72, 205 A.2d 873, 877 (1965) (citations omitted).

The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called "philosophic sense," yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.

Restatement (Second) of Torts § 431 cmt. a (1965). In sum, "[w]hether the analysis proceeds in terms of 'duty', 'foreseeability', or 'proximate cause,'" the essential inquiry is "some method of limiting liability to those consequences which have some reasonably close connection with the defendant's conduct and the harm which it originally threatened, and are in themselves not so remarkable and unusual as to lead one to stop short of them." *Hoffman v. Sun Pipe Line Co.*, 394 Pa.Super. 109, 575 A.2d 122, 126 (1990) (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts*, § 43, at 300 (5th ed.1984)).

In order for a party to have a duty, the law requires a party to have knowledge. *Morena v. S. Hills Health Sys.*, 501 Pa. 634, 642, 462 A.2d 680, 684 (1983) (holding, "Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time, ... and necessarily requires some degree of knowledge." (citations omitted)). In *Morena*, the victim was shot and paramedics transported him to the nearest hospital. *Id.* at 639, 462 A.2d at 683. The hospital determined that thoracic surgery was required, and because it did not have a thoracic surgeon, the victim had to be transported to another hospital. *Id.* at 639–40, 462 A.2d at 683. The paramedics were asked to make an inter-hospital transfer of the victim. *Id.* at 640, 462 A.2d at 683. Because of the shortage of paramedics—they comprised one of the four teams responsible for Pittsburgh—the policy was not to make inter-hospital transfers. *Id.* The paramedics requested permission for the transfer from their supervisor, who denied permission. *Id.* The hospital never informed the paramedics that the transfer was of "an emergency nature." *Id.* A private ambulance service ultimately transported the victim, who later died. *Id.* at 640, 462 A.2d at 683–84. The decedent's estate sued the paramedics and the City of Pittsburgh under Section 323; the trial court granted nonsuit, and the Superior Court affirmed. *Id.* at 638, 462 A.2d at 682.

The Pennsylvania Supreme Court also affirmed the nonsuit, holding that "there was no basis upon which these defendants

could have been found negligent." *Id.* at 641, 462 A.2d at 684. The *Morena* Court refused to hold the paramedics responsible because the record did not establish the paramedics were aware that the requested transfer was an emergency. *Id.* at 643, 462 A.2d at 685. "The existence of any subsequent duty [beyond initial transportation]," the Court held, "necessarily rested upon some knowledge on the part of the paramedics that the requested transfer constituted an emergency." *Id.* Absent record evidence of knowledge, the paramedics could not be found to have had a duty. *Id.* at 644, 462 A.2d at 685.

Based on the arguments preserved by Appellant, I would hold that she has not established, as a matter of law for Section 323 liability, that PECO's performance of its contractual obligations to provide electricity and change light bulbs was a substantial factor of the cause of her injuries. *See Hamil,* 481 Pa. at 265, 392 A.2d at 1284; *Majors,* 416 Pa. at 271–72, 205 A.2d at 877. I would similarly conclude that Appellant has not identified material issues of fact with respect to PECO's knowledge of an expanded duty to "update and modernize," *see* Appellant's Brief at 22, the streetlight at issue. *See Morena,* 501 Pa. at 642, 462 A.2d at 684. Absent knowledge of that expanded duty, I would opine PECO cannot be found to have negligently performed that duty. *See id.* Even assuming PECO had such knowledge, I am unaware of any material issues of fact that PECO failed to modernize the instant streetlight properly. *See id.* Accordingly, I would hold that Appellant has not established proximate cause and the applicability of the "Good Samaritan" doctrine to PECO, and thus would affirm the trial court's order granting summary judgment in favor of PECO.