J-A25006-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| THERESE M. GREIM, NICOLE GREIM, A MINOR, BY THERESE M. GREIM, GUARDIAN, AND EVAN GREIM, | : IN THE SUPERIOR COURT OF<br>:      PENNSYLVANIA<br>: |
|        Appellants | : |
|        v. | : |
| MARY V.Z. WACHTERHAUSER AND JESSICA SIROLLY, | : |
|        Appellees | : No. 479 EDA 2015 |

Appeal from the Order January 28, 2015,
Court of Common Pleas, Delaware County,
Civil Division at No. 2013-2893

BEFORE:  DONOHUE, MUNDY and FITZGERALD*, JJ.

MEMORANDUM BY DONOHUE, J.:        **FILED OCTOBER 20, 2015**

Appellants, Therese M. Greim ("Mother"), Evan Greim, and Nicole Greim, a minor, by Mother (the latter two appellants referred to collectively as "the children"), appeal from the January 28, 2015 order entered by the Delaware County Court of Common Pleas granting the motion for a directed verdict requested by Mary V.Z. Wachterhauser ("Attorney Wachterhauser") and Jessica Sirolly ("Attorney Sirolly") (referred to collectively as "counsel") in this legal malpractice action.  Upon review, we affirm.

The trial court summarized the relevant factual and procedural histories of the case as follows:

> Mother and Robert Greim ("Father") were married in 1994. In 1998, Father obtained a term life insurance policy with a death benefit of three

*Former Justice specially assigned to the Superior Court.

hundred fifty thousand dollars ($350,000.00). The parties had two (2) children during the marriage who were born in 1995 and 1999, respectively. Mother and Father separated in 2008 and Mother [retained counsel, who] filed for divorce [on her behalf] on February 2, 2009. In 2010, Father's life insurance policy lapsed due to Father's failure to pay premiums and Mother received notification of the lapse by letter dated August 31, 2010. The August 31, 2010 letter included notice that the policy would not be reinstated absent proof of Father's insurability. During an equitable distribution hearing on October 10, 2010, Mother and Father entered into a property settlement agreement ["PSA"].  As part of the [PSA], Father agreed to reinstate and/or obtain a life insurance policy with a death benefit of three hundred fifty thousand dollars ($350,000.00), name the children as beneficiaries of the policy and maintain such as long as was financially feasible. In the event Father experienced a change of financial circumstances, Father reserved the right to maintain a policy as low as fifty thousand dollars ($50,000.00).  [Counsel's] representation of Appellants terminated no later than February 17, 2011. Father died on April 11, 2011 without a life insurance policy.

Appellants initiated the instant action by [w]rit of [s]ummons on April 1, 2013. In their [c]omplaint filed on May 7, 2013, they allege that [counsel] were negligent in their representation of Appellants in an equitable distribution action between Mother and Father. Appellants allege that negligence caused the children to be left without the benefit of the life insurance policy that Father agreed to reinstate and/or obtain for the children's benefit. Appellants also allege that [counsel's] negligence caused Mother to incur unexpected financial costs related to the children's ongoing health, education and welfare.

[Counsel] filed preliminary objections on August 12, 2013 arguing, inter alia, that Mother should be dismissed as a plaintiff because Appellants failed to

allege that Mother had any interest in the proceeds of the life insurance policy that was to have the children as beneficiaries and, therefore, failed to establish that Mother suffered or was entitled to recover damages. The Honorable Christine Fizzano-Cannon entered an [o]rder on October 16, 2013 dismissing Mother as a plaintiff. Subsequently, on July 14, 2014, Appellants filed a [p]etition for [l]eave to [f]ile [a]mended [c]omplaint seeking to add Mother back in as a plaintiff. Appellants allege that on July 2, 2014, following a subpoena issued on May 23, 2014, Mother discovered she was the beneficiary of Father's prior insurance policy at the time that it lapsed in 2010. Appellants allege further that the lapse of the policy was a result of further legal malpractice by [counsel]. On August 4, 2014, [counsel] filed their [o]pposition to [a]ppellants' [p]etition claiming, inter, alia, that any individual claim for legal malpractice by Mother is barred by the applicable statute of limitations. An [o]rder was entered on August 13, 2014 denying Appellants' [p]etition.

Following the close of evidence at trial on the children's claims alone, [counsel] made an oral motion for directed verdict. Based upon the issues raised by [counsel] and upon consideration of all the evidence and testimony offered at trial, reviewed in a light most favorable to Appellants, an [o]rder was entered on September 17, 2014 directing verdict in favor of [counsel]. Appellants filed their [m]otion for [p]ost –[t]rial [r]elief on September 29, 2014, which was denied by [o]rder dated January 28, 2015. A [p]raecipe to [e]nter [j]udgment on [the d]irected [v]erdict was filed on February 4, 2015 and, subsequently, final [j]udgment was entered in favor of [counsel].

Trial Court Opinion, 4/13/15, at 2-4 (record citations omitted).

On appeal, the children[1] raise one issue for our review:

> Did the lower court commit legal error and/or abuse its discretion[] by having directed a verdict in favor of [counsel] as to the attorney malpractice claim of [the children] against [counsel] due to the absence of a prior agreement by [Father] to reinstate or replace the $350,000 life insurance policy[] naming the [c]hildren as beneficiaries[] as required by the terms of the October 13, 2010 [PSA] between [Mother] and [Father] and/or the purported preclusive effect of the Divorce Code applicable to equitable distribution cases?

Appellants' Brief at 2.

We begin by stating our well-settled standard and scope of review of a trial court's grant of a motion for a directed verdict:

> In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in the light most favorable to the verdict winner. … We will reverse a trial court's grant or denial of a directed verdict [] only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

> There are two bases upon which a directed verdict [] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the

_____

[1] The issue raised on appeal pertains solely to the trial court's issuance of a directed verdict in favor of counsel. As Mother was not a party at trial, the issue is raised solely by the children.

movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Hall v. Episcopal Long Term Care*, 54 A.3d 381, 395 (Pa. Super. 2012) (citation omitted).

To prove a claim of legal malpractice, the plaintiff has the burden of proving three elements: "1) employment of the attorney or other basis for a duty; 2) the failure of the attorney to exercise ordinary skill and knowledge; and 3) that such negligence was the proximate cause of damage to the plaintiff." *Nelson v. Heslin*, 806 A.2d 873, 876 (Pa. Super. 2002) (citation omitted). "An essential element to this cause of action is proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or threat of future harm." *Id.* (citation omitted). Further,

> [o]ur Supreme Court has held that "a legal malpractice action in Pennsylvania requires the plaintiff to prove that [s]he had a viable cause of action against the party [s]he wished to sue in the underlying case and that the attorney [s]he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a 'case within a case')." *Kituskie v. Corbman*,[] 714 A.2d 1027, 1030 ([Pa.] 1998). …"It is only after the plaintiff proves [s]he would have recovered a judgment in the underlying action that [she] can then proceed with proof that the attorney [s]he engaged to prosecute ... the underlying action was negligent in the handling of the underlying action and that negligence was the proximate cause of the plaintiff's loss since it prevented [her] from being properly compensated for [her] loss." *Id.*

***Sokolsky v. Eidelman***, 93 A.3d 858, 862-63 (Pa. Super. 2014).

The children assert that the trial court erred by taking the case away from the jury and directing a verdict in favor of counsel. Appellants' Brief at 27-28. According to the children, they presented evidence through the testimony of Mother and the children's expert witness, Attorney Samuel C. Totaro, that (1) there was an implied attorney-client relationship between counsel and the children[2]; (2) counsel negligently failed to investigate whether Father was insurable; and (3) this negligence was the proximate cause of the children's damages – the loss of the insurance policy. ***Id.*** at 16, 22, 24-25. The children state that there is no basis for finding that their damages were speculative – only the fact of damages must be proven, not the amount. ***Id.*** at 24 (citing ***Rizzo v. Haines***, 555 A.2d 58, 69 (Pa. 1989)). The children further argue that the PSA must be evaluated as a contract, to which the children were intended third party beneficiaries, and that they would have successfully been able to sue Father for breach of contract. ***Id.*** at 20-22.

---

[2] "Absent an express contract, an implied attorney-client relationship will be found if 1) the purported client sought advice or assistance from the attorney; 2) the advice sought was within the attorney's professional competence; 3) the attorney expressly or impliedly agreed to render such assistance; and 4) it is reasonable for the putative client to believe the attorney was representing him." ***Cost v. Cost***, 677 A.2d 1250, 1254 (Pa. Super. 1996) (quoting ***Atkinson v. Haug***, 622 A.2d 983, 986 (Pa. Super. 1993)) (internal citation omitted).

At the close of trial, when granting counsel's motion for a directed verdict, the trial court stated the following:

> I find that the facts are clear and there's no room for doubt that the claim of the [d]efense [sic] should be removed [from] the jury's consideration. I've considered the testimony of the [p]laintiff[s] and the evidence presented[] [a]nd have arrived at [the conclusion that] even if there was an attorney[-]client relationship between the attorneys, the [d]efendants, and the children, and even if there was negligence, I haven't seen where the [children have] sufficiently proved that any negligence was the []proximate cause of any actual damages. And my reasoning is because [] the children[] had no underlying cause of action against [F]ather for any proceeds of any life insurance policy prior to [M]other entering into a [PSA].

N.T., 9/17/14, at 26-27. In its written opinion pursuant to Pa.R.A.P. 1925(a), the trial court further explains that the life insurance provision was part of the equitable distribution order, and pursuant to the Divorce Code, a court's "authority is limited to directing that existing policies be maintained with existing beneficiary designations and the discretion to require the purchase of a life insurance policy to protect the interests of a party." Trial Court Opinion, 4/13/15, at 7 (citing 23 Pa.C.S.A. § 3502(d)). The children lacked standing to participate in the equitable distribution hearing or to challenge the resultant order. *Id.* at 7-8. The trial court further found that even if the children had a viable cause of action against Father, they failed to prove the existence of damages, as they failed to present evidence that Father was in fact uninsurable, and Mother never sought to enforce the

provision requiring that Father purchase life insurance for the children's benefit. *Id.* at 8.

Upon reviewing the record, we find no error or abuse of discretion in the trial court's decision to grant counsel's motion for a directed verdict as the evidence, viewed in the light most favorable to the children, entitled counsel to judgment as a matter of law. *See Hall*, 54 A.2d at 395. Assuming solely for the sake of this argument that counsel owed a duty to the children and that counsel breached that duty, as the children claimed, by failing to investigate whether Father was insurable, there is absolutely no evidence of record to support a conclusion that counsel's negligence in this respect was the proximate cause of any damages. *See Nelson*, 806 A.2d at 876.

> Proximate cause is a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of defendant, ... and it may be established by evidence that the defendant's negligent act or failure to act was a substantial factor in bringing about the plaintiff's harm. The defendant's negligent conduct may not, however, be found to be a substantial cause where the plaintiff's injury would have been sustained even in the absence of the actor's negligence.

*Wilson v. PECO Energy Co.*, 61 A.3d 229, 237-38 (Pa. Super. 2012) (quoting *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978)).

The record reflects that Attorney Totaro testified that in his expert opinion, Attorney Sirolly breached her duty to the children by failing to

investigate whether Father was insurable upon learning that Father had a medical condition that could be a basis to deny him insurance, as she was aware that for Father to obtain medical insurance, he had to provide proof of insurability. N.T., 9/16/14 (Volume I), at 74. Attorney Totaro further testified that this failure by Attorney Sirolly was "directly related to the damages, which is the loss of the policy." *Id.* at 78.

The only way Attorney Sirolly's negligence in failing to investigate Father's insurability could have proximately caused the loss of the policy, however, is if Father was not in fact insurable (i.e., that he failed to obtain life insurance policy because he was uninsurable). The children concede that there was no evidence regarding Father's insurability. They baldly state that such a requirement would be "absurd," because "it would be impossible to ascertain and prove the insurability of a person after his death." Appellants' Brief at 22. We disagree, as we see no reason that a medical witness or someone from an insurance agency could not review Father's medical records during the relevant time period and make a determination as to Father's insurability at that time.

The children also attempt to shift the burden of proof on this issue, stating, without citation to authority, that evidence that Father was uninsurable went to an "'impossibility of performance' defense," and that counsel had the "burden to prove such defense by proffering facts showing that [Father] was uninsurable (rendering his contract performance

impossible)." ***Id.*** As the above-cited case law makes clear, however, the children had the burden to prove that counsel's negligence (the failure to investigate Father's insurability) was the proximate cause of damage (the loss of the insurance policy). ***See Nelson***, 806 A.2d at 876. The children failed to satisfy their burden of proof regarding a material element of a claim of legal malpractice, and as such, counsel was entitled as a matter of law to the entry of judgment in their favor.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2015

- 10 -