J-S12029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DOUGLAS C. CHARNEY, SON & EXECUTOR OF THE ESTATE OF D'ARCY C. WAGONHURST, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JENNA REITZ AND FRIENDS OF PEACE CHURCH, INC., | |
| Appellees | No. 1573 MDA 2017 |

Appeal from the Order entered September 21, 2017,
in the Court of Common Pleas of Cumberland County,
Civil Division, at No(s): 2015-03977.

BEFORE:  LAZARUS, J., KUNSELMAN, J. and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:               **FILED APRIL 20, 2018**

Douglas Charney, on behalf of himself and the estate of his mother, D'Arcy Wagonhurst, appeals the trial court's dismissal of the causes of action he filed against Friends of Peace Church, Inc. (FOPC). [1]  After careful review, we reverse and remand for further proceedings.

---

[1] The trial court granted summary judgment in favor of Friends of Peace Church, Inc.  Jenna Reitz did not file for summary judgment.  Because the trial court order was not a final order, as defined by Pa.R.A.P. 341(b), Charney filed an Application for Determination of Finality Pursuant to Pa.R.A.P. 341(c). The trial court issued an order indicating that this order was a final order and that an immediate appeal would facilitate resolution of the entire case.  Accordingly, we will proceed with a decision in this matter.

This case stems from a fatal car accident on December 7, 2014, when Jenna Reitz fatally struck 84-year-old D'Arcy Wagonhurst, as Ms. Wagonhurst was crossing the street to attend a Christmas program at her church, FOPC. FOPC does not have adequate parking; it is undisputed that the church has only four (4) paved parking spots on site. As a result, FOPC instructed visitors to park across the street in a private commercial lot. This has gone on for decades. When visitors park at the commercial lot, they must walk across St. John's Church Road, which has very heavy traffic.

At various times, FOPC undertook safety measures to assist those crossing the street. On occasion, they gained assistance with traffic control from local police or firemen. They also used four reflective safety cones to aid people crossing the street. FOPC used the cones on the night of the accident. The location of the cones, on that night, is in dispute.

Mr. Charney raises one issue on appeal: Whether summary judgment was inappropriate as to FOPC, because the undisputed facts establish that the FOPC voluntarily assumed a duty of care for attendees.

Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only when it is established that the court committed an error of law or abused its discretion. ***Englert v. Fazio Mech. Services, Inc.,*** 932 A.2d 122, 124 (Pa.Super. 2007) (internal citations omitted).

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Pa. R.C.P. 1035.2. The reviewing court must view the record in the light most favorable to the non-moving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. ***Englert,*** 932 A.2d at 124. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment. ***Id.***

The trial court granted summary judgment based on this Court's decision in ***Newell v. Montana W. Inc***., 154 A.3d 819 (Pa.Super. 2017), which involved similar, but not identical, facts. In that case, Victor Newell was attending a concert at Montana West, a nightclub located on the side of a four-lane state highway maintained by the Commonwealth. ***Id.*** Without permission of DHL Machine Company, Newell parked his car on its property, across the highway from Montana West. ***Id.*** While crossing the highway to return to his car, Newell was hit and killed by a vehicle driving on the highway. ***Id.*** Newell's estate sued Montana West, and the trial court, granting summary judgment, found that Montana West owed no duty to Newell. ***Id.***

In this case, the trial court found the facts to be substantially similar to ***Newell*** and likewise granted summary judgment. The trial court concluded that FOPC owed no duty to Ms. Wagonhurst.

On appeal, Mr. Carney argues, that the facts of **Newell** are distinguishable from this case, because, here, FOPC voluntarily assumed a duty to protect pedestrians who parked across the street. In so doing, he claims FOPC may be held liable if it was negligent in fulfilling that duty. We agree.

In **Newell**, a panel of this Court held that Montana West had no duty to protect the safety of those who parked across the street. We thoroughly addressed three key issues in that case. First, we determined that a landowner owed no duty to pedestrians on adjoining roadways. **Id**. at 823-827. Second, we concluded that a landowner owed no duty to provide adequate parking on its premises. **Id**. at 827-836. Finally, we found the landowner did not voluntarily assume a duty by employing prior safety measures. **Id**. at 836–39.

Significantly, with respect to this third issue, the complaint in **Newell** did not allege that Montana West voluntarily assumed a duty of care. Rather, it alleged that Montana West "failed to do anything to protect its customers who were crossing the street to [its] business." We concluded that the evidence failed to show any consistent or ongoing pattern of conduct by Montana West to voluntarily undertake safety precautions regarding invitees parking outside its premises. **Id**. at 837.

In **Newell**, we also noted that *occasional* past voluntary measures to protect patrons did not change the application of the no-duty rule. **Id**. at 837-38 (*citing* **Ferreira v. Strack**, 636 A.2d 682, 688 (R.I. 1994), where a

church did not assume a duty to request traffic control by the police or to warn parishioners of danger, because it sometimes requested such traffic control services in the past).

Finally, in **Newell**, we looked at Section 323 of THE RESTATEMENT SECOND OF TORTS, which provides that if someone voluntarily undertakes to render services to another for their protection, that person is liable for negligence in performing the duty that it voluntarily assumed.[2] The Supreme Court of Pennsylvania has adopted Section 323. **See Feld v. Merriam**, 485 A.2d 742, 746-47 (Pa. 1984). The Supreme Court emphasized, however, that an invitee "may rely upon a program of protection only within the reasonable expectations of the program" that the person voluntarily provided. **Id**. at 747. Thus, if a business voluntarily offers its invitees services in addition to those that it has a legal duty to provide, the business may be held liable for negligent provision of those

_____

[2] Section 323 provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323.

services only to the extent of the business' voluntary undertaking, beyond which it has no duty. ***See, e.g., Kerns v. Methodist Hosp.***, 574 A.2d 1068 (Pa. Super. 1990). We noted in ***Newell*** that, under Section 323, the mere fact that a party gratuitously provides a service does not obligate that party to continue to provide the service indefinitely and that the party is free to abandon the undertaking. ***Newell***, 154 A.3d at 838, *citing* THE RESTATEMENT SECOND OF TORTS § 323, comment c.

Applying this rule to the facts, we concluded in ***Newell*** that Montana West did not voluntarily assume a duty to protect its invitees from accidents on the adjacent highway. Even if Montana West engaged in some protective conduct on some sporadic prior occasions, such conduct did not rise to the level of voluntary assumption of a legal duty that obligated Montana West to provide protective services at all later events. Additionally, we found no evidence of any promise or undertaking by Montana West to Newell, implicit or otherwise, to provide him personally with safe passage to and from the nearby property or to protect him from an accident on the highway if he parked across the street.

Here, Mr. Charney argues that the facts demonstrate that FOPC voluntarily assumed a duty to its visitors who parked across the street. First, unlike in ***Newell***, where Montana West attempted to dissuade its patrons from parking across the street, FOPC *encouraged* its visitors to park across the street. FOPC instructed visitors to use the parking lot across St. John's Church Road. Second, FOPC utilized reflective traffic cones on St

John's Church Road. Mr. Charney argues that the use of traffic cones at every event since they were purchased, ironically by Ms. Wagonhurst, demonstrates an undertaking to protect visitors of FOPC. Use of the cones on a regular basis, he alleges, unequivocally establishes a consistent or ongoing pattern of conduct to voluntarily undertake safety precautions regarding invitees parking in the lot across the street. Third, FOPC hired an employee whose duties included, among other things, assisting patrons in crossing St. John's Church Road. This employee was working on the night of the accident. We believe these facts distinguish this case from **Newell**, and establish that FOPC voluntarily undertook a duty to assist those who parked in the lot across the street from the church.[3] Thus, we conclude that FOPC owed a duty to Ms. Wagonhurst on the night of her accident.

Additionally, Mr. Charney suggests that the use of volunteers in the past and prior requests for officer support also distinguish this case from **Newell**, and give rise to the assumption of a duty on the part of FOPC. We disagree with this argument. As the court noted in **Newell**, the mere fact

---

[3] Mr. Charney also argued that the FOPC board of directors attempted to undertake additional steps to aid visitors in safely crossing St. John's Church Road. They had discussions about placing signs, installing a crosswalk and requesting volunteer firemen or police to aid in traffic control. For various reasons, FOPC was prevented from taking any affirmative action to alert drivers, other than using the traffic cones. Essentially, any additional or permanent measures were prohibited by PennDOT. We are not persuaded that any of these additional actions gave rise to a duty on behalf of FOPC.

that a party gratuitously provides a service does not obligate that party to continue to provide the service indefinitely and that the party is free to abandon the undertaking. **Newell**, 154 A.3d at 838. (*citing* Rest. 2d Torts, 323, comment c.).

Nonetheless, we conclude that the FOPC undertook sufficient steps to voluntarily assume a duty to protect its visitors who parked in the lot across St. John's Church Road on the night of the accident. This duty started when FOPC instructed its visitors to park in this lot. This fact, alone, might not create a duty on the part of FOPC. **See Newell**, 154 A.3d at 829-30.[4] However, this, coupled with the additional facts that FOPC hired an employee to assist in ensuring the safety of pedestrians, and used reflective traffic cones *regularly*, including on the night in question, suggests FOPC undertook "a consistent or ongoing pattern of conduct to voluntarily protect invitees who parked across the street." **Newell,** 154 A.3d at 837. Thus, whether it acted negligently in undertaking these duties on the night Ms. Wagonhurst was killed created a question of fact for the jury to decide. **Wilson v. PECO Energy Co.**, 61 A.3d 229, 233 (Pa. Super. 2012) (whether

---

[4] In **Newell**, this Court cited with approval a New York case, where the court found no duty on the part of a funeral home whose employee instructed patrons to park at a lot across the street. **Id**. at 829-830 (*citing* **Santoleri v. Knightly**, 663 N.Y.S.2d 505 (Sup. Ct. Monroe Cnty, 1997). In **Santoleri,** the court held patrons who were injured when they were struck crossing the street had no cause of action against the funeral home. **Santoleri**, 663 N.Y.S. 2d at 506, 508.

a defendant exercised reasonable care in the performance of a duty under section 323 is a question for the jury).

Although the facts here are somewhat similar to **Newell**, they differ significantly, because, unlike Montana West, FOPC regularly undertook actions to assist visitors when crossing the street. Therefore, we are constrained to reverse the decision of the trial court in this matter, with respect to the issue of whether FOPC owed a duty to pedestrians, like Ms. Wagonhurst, and remand for a jury trial consistent with this memorandum.

In its counterstatement of issues on appeal, FOPC asks that, if we reverse the trial court's decision regarding lack of a legal duty, we affirm the dismissal of Mr. Charney's claim for punitive damages against FOPC. Although FOPC requested summary judgment on the claim for punitive damages, the trial court did not rule on this issue, because it granted summary judgment on the no-duty argument. As the trial judge failed to rule on this issue, we are unable to address it in this appeal.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/20/18