J-A16025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HELEN J. PETERS AND MONTIE E. PETERS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 1711 MDA 2018 |
| WELLSBORO HOTEL COMPANY AND PENN-WELLS HOTEL | : | |

Appeal from the Order Entered September 20, 2018
In the Court of Common Pleas of Tioga County Civil Division at No(s):
0040-CV-2016

BEFORE: LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY MURRAY, J.: **FILED JULY 30, 2019**

Helen J. Peters (Mrs. Peters) and Montie E. Peters (Mr. Peters) (collectively Appellants) appeal from the order granting summary judgment in favor of Wellsboro Hotel Company and Penn-Wells Hotel (Appellees). For the reasons that follow, we affirm.

On the evening of February 23, 2014, Appellants dined at Appellees' restaurant. After dinner, as Appellants were leaving, Mrs. Peters fell on the sidewalk. Mrs. Peters sustained injuries as a result of the fall.

On January 19, 2016, Appellants filed a complaint in which they alleged that Mrs. Peters' injuries were caused by Appellees' negligence. Specifically, Appellants asserted that Appellees owed a duty of care to Appellants as

_____

* Former Justice specially assigned to the Superior Court.

business invitees and breached that duty, causing injury to Appellants because Appellees "knew or should have known that the step was unsafe, insufficiently demarcated or lit, and posed a hazardous condition to guests, patrons, business invitees, and the general public exiting the restaurant." Complaint, 1/19/16, ¶ 14. The complaint further alleged that Appellees' negligence led to a loss of consortium for Mr. Peters arising from Mrs. Peters' injuries.

On March 3, 2016, Appellees filed an answer and new matter to which Appellants replied on March 28, 2016. The parties subsequently engaged in discovery, which, pertinent to this appeal, included the depositions of both Appellants and the EMS workers who treated Mrs. Peters at the accident scene.

On April 25, 2018, Appellees filed a motion for summary judgment. Appellees argued that Appellants failed to present any evidence that a dangerous condition existed, or any evidence showing Appellees had any notice, actual or constructive, of a dangerous condition that would have caused Mrs. Peters' fall. On August 17, 2018, following the submission of briefs, the trial court held a hearing on the motion. On September 20, 2018, the trial court entered an order granting Appellees' motion for summary judgment and dismissing Appellants' claims. Appellants filed this timely appeal.[1]

Appellants present two issues for our review:

---

[1] Both the trial court and Appellants have complied with Pennsylvania Rule of Appellate Procedure 1925.

> A. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND/OR ERRED AS A MATTER OF LAW BY GRANTING SUMMARY JUDGMENT TO [APPELLEES] IN CONTRAVENTION OF PA.R.C.P. 1035.2, THE CASE LAW INTERPRETING THE RULE, AND THE SPECIFIC JURISPRUDENCE APPLICABLE TO THIS CASE?
>
> B. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND/OR ERRED AS A MATTER OF LAW BY GRANTING SUMMARY JUDGMENT WITHOUT PERMITTING THE ISSUES IN THIS MATTER TO BE SUBMITTED TO A JURY?

Appellants' Brief at 4.

Both of Appellants' issues challenge the trial court's decision to dismiss their action by granting summary judgment. Therefore, we address both issues together. Our standard of review regarding a trial court's decision to grant or deny a motion for summary judgment is as follows:

> A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Thompson v. Ginkel***, 95 A.3d 900, 904 (Pa. Super. 2014).

With respect to the grant of summary judgment, this Court has stated:

> [A] proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense[.] Under [Civil] Rule 1035.2(2), if a defendant is the moving party, he may make the showing necessary to support the entrance of summary judgment by pointing to materials which indicate that the plaintiff is unable to satisfy an element of his cause of action. Correspondingly, [t]he non-moving party must adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof such that a jury could return a verdict favorable to the non-moving party.

> ***Basile v. H & R Block, Inc.,*** 777 A.2d 95, 100–01 (Pa. Super. 2001) (citations and [quotations] omitted). Thus, a plaintiff's failure to adduce evidence to substantiate any element of his cause of action entitles the defendant to summary judgment as a matter of law.

***Sass v. AmTrust Bank,*** 74 A.3d 1054, 1059 (Pa. Super. 2013).

In any case alleging negligence, the plaintiff has the burden to prove the following four elements: "1. [a] duty or obligation recognized by law[,] 2.[a] breach of the duty[,] 3. [c]ausal connection between the actor's breach of the duty and the resulting injury[, and] 4. [a]ctual loss or damage suffered by complainant." ***Wilson v. PECO Energy Co.***, 61 A.3d 229, 232 (Pa. Super. 2012) (quoting ***Cooper v. Frankford Health Care System, Inc.***, 960 A.2d 134, 140 n.2 (Pa. Super. 2008) (citation omitted), *appeal denied,* 970 A.2d 431 (Pa. 2009)). "[I]t is incumbent on a plaintiff to establish a causal connection between defendant's conduct, and it must be shown to have been the proximate cause of plaintiff's injury." ***Lux v. Gerald E. Ort Trucking,***

***Inc.***, 887 A.2d 1281, 1286 (Pa. Super. 2005) (quotations and citation omitted). A court must grant summary judgment "where the evidence is such that a jury would have to reach a verdict on the basis of speculation or conjecture." ***InfoSAGE, Inc. v. Mellon Ventures, L.P.***, 896 A.2d 616, 632 n.12 (Pa. Super. 2006) (citing ***Cade v. McDanel***, 679 A.2d 1266, 1271 (Pa. Super. 1996)).

We further recognize that "[t]he duty owed to a business invitee is the highest duty owed to any entrant upon land. The landowner is under an affirmative duty to protect a business visitor not only against known dangers but also against those which might be discovered with reasonable care." ***Truax v. Roulhac***, 126 A.3d 991, 997 (Pa. Super. 2015) (*en banc*) (quotations and citation omitted). This Court has explained:

> In determining the scope of duty property owners owe to business invitees, we have relied on Restatement (Second) of Torts § 343, which provides:
>
> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, if but only if, he:
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.
>
> ***See Neve v. Insalaco's***, 771 A.2d 786, 790 (Pa. Super. 2001) (quoting Restatement (Second) of Torts § 343).

5

An invitee must demonstrate that the proprietor deviated from its duty of reasonable care owed under the circumstances. *Id.* at 791. Thus, the particular duty owed to a business invitee must be determined on a case-by-case basis. . . . Restatement Section 343A provides that no liability exists when the dangerous condition is known or obvious to the invitee unless the proprietor should anticipate the harm despite such knowledge. Restatement (Second) of Torts § 343A(1) (1965). Comment (e) states:

> If [the invitee] knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

Restatement (Second) of Torts § 343A cmt. e (1965).

*Campisi v. Acme Markets, Inc.*, 915 A.2d 117, 119-20 (Pa. Super. 2006) (some citations omitted).

Here, there is no dispute that Appellants were business invitees to whom Appellees owed the highest duty of care, and that Mrs. Peters suffered harm while on Appellees' property. The dispute is whether Appellees breached their duty of care and whether the alleged breach caused Appellants' harm.

In granting Appellees' motion for summary judgment, the trial court explained:

> In the current case, [Appellants] failed to put forward any evidence that [Appellees] breached their duty of care to them or

6

that a dangerous condition even existed on [Appellees'] property. In her deposition Mrs. Peter[s] indicated she fell while exiting [Appellees'] property because she "missed a step." Helen Peters' Deposition, pp. 34-35. She testified she could not remember if the step was wet. *Id.* She also testified the step seemed to be structurally sound and did not appear to be broken or cracked in any way. *Id.* Mr. Peters likewise testified "there is no issue with the structure of the step." Montie Peters' Deposition, p. 18. The record, therefore, is devoid of any evidence showing anything regarding the step itself created a dangerous condition that would constitute a breach of [Appellees'] duty of care to [Appellants].

As [Appellants] fail to put forward any evidence about a physical defect to the step they argue [Appellees'] breach was actually the environment surrounding the step. [Appellants] argue [Appellees] breached their duty of care because of poor lighting surrounding the step, the lack of a railing on the steps, and the lack of yellow tape or other marking indicating the existence of the step. When [Appellants] left [Appellees'] property it was dark outside. Mrs. Peters testified it was quite dark out when she fell and she remembered seeing streetlights on. H.P. Deposition at 35. Mr. Peters testified it was "relatively dark" when they exited but not "annoyingly dark." M.P. Deposition at 15. He also testified the interior lights were on in the hotel entrance way but did not remember if the street lights were illuminated. *Id.* In addition, Steven Seeley, one of the EMS workers who treated Mrs. Peters at the scene, testified there was enough light that they were able to treat her without using the artificial lights they carry in their ambulance. Steven Seeley Deposition p. 9. There is nothing in this testimony to show [Appellees] deviated in any way from their duty of reasonable care in the circumstances leading up to Mrs. Peters' fall. There is no evidence in the record the lack of an exterior light, in the circumstances presented by the testimony, created a harmful condition. The same analysis applies for the lack of a railing or any yellow tape demarcating the location of the step. While the court must view the record in the light most favorable to the [Appellants], [Appellants] are still required to put forth some evidence to prove a dangerous condition existed. Here, [Appellants] failed to do so, except for the fact that an accident occurred. Simply because an accident occurred, however, does not necessarily mean a dangerous condition existed.

7

Furthermore, **even if the lack of these additional safety precautions was a breach of [Appellees'] duty of care to Mrs. Peters, there is no evidence of a causal link between their absence and Mrs. Peters' injuries. Mrs. Peters' testimony was she "missed a step." She gave no indication in her deposition as to why she missed the step. She did not say she missed the step because she could not see it. She did not say she missed the step because it was too dark. She did not say she missed the step because of the absence of a handrail or yellow warning tape. There is simply no evidence in the record connecting Mrs. Peters' fall to the alleged dangerous conditions on [Appellees'] property.** In order for the jury to find the alleged dangerous conditions caused Mrs. Peters' fall they would have to engage in speculation and speculation alone does not create a genuine question of material fact[.]

As [Appellees] did not breach a duty to [Appellants] since no dangerous condition existed at the time of Mrs. Peters' fall and there is no causal connection between the alleged dangerous conditions and Mrs. Peters' fall, no substantial question of material fact exists and the court correctly granted [Appellees'] motion for summary judgment.

Trial Court Opinion, 12/17/18, at 5-7 (unnumbered) (emphasis added).

Appellants argue that the trial court erred in dismissing their negligence claim because the trial court incorrectly concluded that Appellants failed to present evidence that a dangerous condition existed that caused Mrs. Peters' fall. Appellants further contend that the trial court improperly based its decision on Mrs. Peters' deposition testimony indicating that she fell because she missed a step. Appellants maintain that the trial court took this testimony out of context when Appellants did, in fact, present evidence indicating both that a dangerous condition existed in the area on and around the step due to insufficient lighting, the lack of a handrail, and the lack of any demarcation

8

indicating that there was a step, and that this dangerous condition caused Mrs. Peters to fall. Appellants assert that the evidence they presented relating to the step raised a question for a jury as to whether there existed a dangerous condition for which Appellees had a duty to warn Appellants.

Conversely, Appellees argue that Appellants failed to meet their burden of proving that a dangerous condition existed at the time and place of Mrs. Peters' fall. Appellees further argue that Appellants failed to demonstrate that any alleged lack of exterior lighting and/or additional safety precautions created a harmful condition that was causally linked to Mrs. Peters' fall, or that Appellees had notice of any alleged dangerous condition.

Upon careful consideration, we affirm the trial court. Although the trial court was correct that Mrs. Peters stated she fell because she did not see a step, we note the full context of Mrs. Peters' testimony. During her deposition, Mrs. Peters stated that by the time she exited the restaurant, it "had gotten dark." Motion For Summary Judgment, 4/25/18, Exhibit B (Deposition of Mrs. Peters, 5/11/17, at 34). She testified:

A. I pushed through the door, and I recall it being dark, because I noticed the street lights. And then I just started walking forward and turned my body to go up the street.

Q. A what happened next?

A. And I fell onto the sidewalk.

Q. Do you know what caused you to fall?

A. Evidently, I didn't see a step.

Q.     Okay.  Is it your belief that that's why you fell?

A.     Yes, it is.

*Id.*

Mrs. Peters stated that although she remembered seeing streetlights, she recalled "it being quite dark." *Id.* at 35.  Mrs. Peters further recounted, "I remember coming through the doorway and thinking that I had went right onto the sidewalk." *Id.* at 39.  When asked to describe why the step she missed was hazardous, Mrs. Peters stated, "The fact that I didn't know it was there." *Id.* at 45.

The testimony continued:

A. There was no indication that there was a step there.

Q. And the – is that the same reason you described it as unsafe in your complaint?

A. Yes.

Q. And that it was improperly maintained?  Is there [sic] any facts that you have that you can share with me –

A. I just feel that it should be more evident that there is a step there.

Q. Okay.  **But do you – and again, do you have any – any facts that you have that maybe I don't that would suggest that that was improperly maintained, the step-down**?

A. **No**.

Q. You say in your complaint that the step-down was improperly demarcated.   What do you mean by that?

A. That you can't tell there's a step there.

10

Q. Okay. You also indicate that it was insufficiently lit. And by that, I presume you meant the artificial lighting because it was nighttime, right?

A. Correct.

Q. Do you remember when you entered the restaurant if you had to step up from the sidewalk to the doors to enter the restaurant?

A. I must have because since it's there.

Q. Okay. But do you have a recollection of that?

A. No.

Motion For Summary Judgment, 4/25/18, Exhibit B (Deposition of Mrs. Peters, 5/11/17, at 46-47) (emphasis added).

At argument before the trial court, Appellees emphasized that Mrs. Peters "isn't even completely aware of what caused her to fall" and argued that the court had a "duty to prevent cases from going to a jury where the jury itself would be required to speculate as to the cause of the fall here." N.T., 8/17/18, at 3.

In response, Appellants recounted the undisputed facts: that Appellants were on Appellees' premises around 5:00 p.m. on February 23, 2014, ate dinner, left the premises when it was dark outside, and Mrs. Peters fell on the premises and broke her hip. *Id.* at 4. Appellants emphasized that as business invitees, they were owed the highest duty of care, and "Mrs. Peters' testimony was that she could not see the step and a determination of whether or not that constitutes negligence on behalf of [Appellees] needs to be answered by a jury." *Id.* at 6.

11

Upon review, we conclude that Appellants failed to meet their burden of establishing a breach of Appellees' duty of care and a causal connection to Mrs. Peters' injury. It was incumbent on Appellants to establish a dangerous condition that was the proximate cause Mrs. Peters' injury. *See Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d at 1286. While "[i]nadequate lighting of stairs has been held to create a dangerous condition sufficient to constitute negligence," *Hall v. Glick*, 110 A.2d 836, 837 (Pa. Super. 1955); *see also Hoss v. Nestor Bldg. & Loan Ass'n*, 63 A.2d 435, 438 (Pa. Super. 1949), Appellants did not establish — by deposition, expert report, or otherwise — that a lack of lighting (or other safety precautions) created a dangerous condition that was the proximate cause of Mrs. Peters' injuries. "Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm." *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d at 1286. "In order to establish causation, the plaintiff must prove that the breach was 'both the proximate and actual cause of the injury.'" *Id.* at 1287 (citing *Reilly v. Tiergarten, Inc.*, 633 A.2d 208, 210 (Pa. Super. 1993)). Further, "[p]roximate cause is a question of law to be determined by the court before the issue of actual cause may be put to the jury." *Id.* at 1287.

Based on our review of the record and prevailing law, we conclude that Appellants failed to establish proximate causation between any breach by Appellees and Mrs. Peters' fall. As noted by the trial court, "there is simply no

evidence in the record connecting Mrs. Peters' fall to the alleged dangerous conditions on [Appellees'] property." Trial Court Opinion, 12/17/18, at 6-7. Thus, Appellants' failure "to adduce sufficient evidence on an issue essential to their case" — and on which Appellants bear the burden of proof — establishes "the entitlement of [Appellees] to judgment as a matter of law." ***Truax v. Roulhac***, 126 A.3d at 997. In sum, the trial court did not commit an error of law or abuse its discretion in granting summary judgment in favor of Appellees.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/2019